[No. 23107-7-II. Division Two. March 5, 1999.]

THE CITY OF TACOMA, *Appellant*, v. FRANCISCAN . FOUNDATION, *Respondent*.

*Robin Jenkinson, City Attorney*, and *Jean P. Homan, Assistant*, for appellant.

*Linda G. White Atkins* of *Davis Wright Tremaine*, for respondent.

HOUGHTON, J. — The City of Tacoma (City) appeals a trial court order granting summary judgment in favor of St.

Joseph Medical Center (St. Joseph). The trial court ruled that the City's antidiscrimination ordinance conflicts with state law and thus is unenforceable against religious nonprofit organizations. We agree and affirm.

## FACTS

The facts are undisputed. St. Joseph is a hospital owned and operated by the Franciscan Health System-West, which is in turn owned and operated by Catholic Health Initiatives. All three entities are religious nonprofit organizations. In fall 1997, two St. Joseph's employees filed separate charges with the Tacoma Human Rights Department alleging religious, disability, race, and national origin discrimination under chapter 1.29 of the TACOMA MUNICIPAL CODE (TMC).[1] St. Joseph challenged the City's jurisdiction to enforce its ordinance against it because St. Joseph is exempt from the state antidiscrimination law.

On December 5, 1997, the City filed a declaratory judgment action in superior court. Both parties moved for summary judgment. The trial court granted St. Joseph's motion and entered a judgment ruling that: (1) the Tacoma Human Rights Department does not have authority under TMC 1.29 to investigate claims of discrimination, make findings, and/or enforce civil penalties against St. Joseph because St. Joseph is expressly exempted from coverage of the state antidiscrimination law; (2) the City's definition of "employer" conflicts with the state definition of "employer" as to religious nonprofit organizations; (3) RCW 49.60.330 prohibits municipalities from enforcing antidiscrimination ordinances in a manner inconsistent with RCW 49.60; and (4) it is inconsistent with RCW 49.60 for the City to enforce

---

[1] Both complainants also filed charges under Title VII with the Equal Employment Opportunity Commission (EEOC) 42 U.S.C. § 2000e-5.

its antidiscrimination ordinance against exempt religious organizations such as St. Joseph. The City appeals.

## ANALYSIS
### Standard of Review and Burden of Proof

The parties agree that review of this case is de novo,[2] but disagree as to St. Joseph's burden of proof in challenging the City's ordinance. The City argues that St. Joseph bears the heavy burden of proving the ordinance unconstitutional beyond a reasonable doubt. See *Rabon v. City of Seattle*, 135 Wn.2d 278, 287, 957 P.2d 621 (1998) (ordinance is presumed constitutional; heavy burden rests on challenger to establish unconstitutionality); *City of Seattle v. Shin*, 50 Wn. App. 218, 220, 748 P.2d 643 (party challenging constitutionality of ordinance must establish unconstitutionality beyond a reasonable doubt), *review denied*, 110 Wn.2d 1025 (1988). St. Joseph counters it merely must show that the City's attempt to enforce its ordinance against St. Joseph exceeds its statutory grant of enforcement authority.

### The Antidiscrimination Laws

Washington's Law Against Discrimination, RCW 49.60, permits injured persons to bring a civil action for employment discrimination. RCW 49.60.010, .030(2). Its definition of "employer" "includes any person acting in the interest of an employer . . . who employs eight or more persons, and does not include any religious or sectarian organization not organized for private profit."[3] RCW 49.60.040(3). The law permits first-class cities to enact their own antidiscrimination ordinances and provide administrative rem-

---

[2]See *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998) (in reviewing a summary judgment order, reviewing court engages in same inquiry as the trial court); *City of Seattle v. Williams*, 128 Wn.2d 341, 347, 908 P.2d 359 (1995) (questions of law are reviewed de novo) (citing *State v. McCormack*, 117 Wn.2d 141, 143, 812 P.2d 483 (1991), *cert. denied*, 502 U.S. 1111 (1992)).

[3]Persons aggrieved by the discrimination of religious nonprofit groups can seek redress under Title VII. See 42 U.S.C. § 2000e-1(a).

edies, as long as such ordinances and remedies are consistent with state law. RCW 49.60.330.

The Tacoma City Municipal Code contains an antidiscrimination ordinance that defines "employer" as "any person . . . acting in the interests of an employer . . . or who has any persons in his, her or its employ." TMC 1.29.030(E). Thus, it includes religious nonprofit organizations.[4]

### The City's Enforcement Powers

The parties' disagreement regarding St. Joseph's burden of proof stems from their disagreement as to the source of the City's power to provide and enforce civil remedies for discrimination. St. Joseph argues that cities have no inherent authority under their police powers to enforce civil and equitable remedies.[5] Thus, the City's only power to provide such remedies arises from RCW 49.60.330.[6] St. Joseph, therefore, limits the inquiry to whether the City can provide antidiscrimination remedies that exceed the scope of authority granted it under RCW 49.60.330. Thus, St. Joseph asserts, the answer is "no" and only statutory construction is required to find in St. Joseph's favor.

---

[4]Although not at issue in this case, the City ordinance also purports to cover employers with fewer than eight employees, which are also exempt from the state law.

[5]In support of this proposition, St. Joseph cites *State v. Brennan*, 76 Wn. App. 347, 884 P.2d 1343 (1994). The *Brennan* court held that the Legislature could not delegate equitable powers to the district courts because the state constitution vests exclusive equitable jurisdiction in the superior courts. *Brennan*, 76 Wn. App. at 349, 356.

[6]RCW 49.60.330 provides:

Any [first-class city] . . . may enact resolutions or ordinances *consistent with this chapter* to provide administrative and/or judicial remedies for any form of discrimination *proscribed by this chapter.* . . . The superior courts shall have jurisdiction to hear all matters relating to violation and enforcement of such resolutions or ordinances, including . . . the award of such remedies and civil penalties *as are consistent with this chapter* . . . . Any local resolution or ordinance *not inconsistent with this chapter* may provide, after a finding of reasonable cause to believe that discrimination has occurred, for the filing of an action in, or the removal of the matter to, the superior court.

(Emphasis added.)

The City contends that its constitutional grant of police powers includes civil and equitable enforcement measures.[7] The City claims that RCW 49.60.330 is permissive, not restrictive, and it can, therefore, provide remedies greater than those permitted by the statute unless a constitutional conflict is shown.

In either case, the question is whether the City's ordinance conflicts with the state law. Because it clearly does, it must yield under both standards.[8]

## Conflict Analysis

 Under their constitutionally granted police powers, cities may enact ordinances prohibiting the same acts state law prohibits as long as the city ordinance does not conflict with the general laws of the state. *City of Bellingham v. Schampera*, 57 Wn.2d 106, 109, 356 P.2d 292, 92 A.L.R.2d 192 (1960). A local ordinance does not conflict with state law merely because one prohibits a wider scope of activity than the other. *City of Seattle v. Eze*, 111 Wn.2d 22, 33, 759 P.2d 366, 78 A.L.R.4th 1115 (1988) (citing *Town of Republic v. Brown*, 97 Wn.2d 915, 919, 642 P.2d 955 (1982)). In determining whether an ordinance conflicts with general laws, the test is: "whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Schampera*, 57 Wn.2d at 111 (quoting *Village of Struthers v. Sokol*, 108 Ohio St. 263, 140 N.E. 519 (1923)).

---

[7]Article XI, section 11 of the Washington Constitution grants first-class cities the power to "make and enforce within [their] limits all such local police, sanitary and other regulations as are not in conflict with general laws." This delegation of power is "as ample within its limits as that possessed by the legislature itself." *Williams*, 128 Wn.2d at 359.

[8]Little authority elucidates the issue of the derivation and extent of a city's civil enforcement powers. Cities, pursuant to their police powers, possessed authority to prohibit discrimination before the enactment of RCW 49.60.330, but the extent of their power to create and enforce remedies apart from criminal sanctions was unclear. *See* 1981 Op. Att'y Gen. No. 14, at 3-4. In 1981, the Legislature enacted RCW 49.60.330 to "authorize[ ] what ha[d] been existing in law." 1981 Op. Att'y Gen. No. 14, at 7 (quoting Senator Talmadge); *see* LAWS OF 1981, ch. 259, § 5. The amendment's legislative history confirms that the amendment was intended to be permissive, not preemptive, *see* 1981 Op. Att'y Gen. No. 14, at 6-7, but otherwise sheds little light on the question of what cities' preexisting enforcement powers were.

The City attempts to justify its ordinance under the foregoing rule by asserting that the state antidiscrimination law does not grant religious nonprofit groups a "license to discriminate." Rather, both the state and local schemes are intended to prohibit discrimination. Therefore the local ordinance does not conflict; it merely goes further in its prohibitions. *See Brown v. City of Yakima*, 116 Wn.2d 556, 562, 807 P.2d 353 (1991) ("Where both the ordinance and the statute are prohibitory, and the difference between them is that the ordinance goes further in its prohibition, they are not deemed inconsistent . . . ."); *State v. Rabon*, 45 Wn. App. 832, 838, 727 P.2d 995 (1986) (question is whether statute authorizes conduct banned by ordinance).

The City's literal interpretation of the rule ignores that the state law expressly exempts religious nonprofit groups.[9] The cases relied upon by the City merely show that local regulations may prohibit conduct that similar state laws fail to address.[10] *See, e.g., Shin*, 50 Wn. App. at 226-27 (city may impose duty on parents to report child abuse though state statute omits parents from list of persons required to report); *Rabon*, 45 Wn. App. at 838 (state law banning chako sticks under certain circumstances does not preclude city from banning them entirely); *Seattle Newspaper-Web Pressmen's Union Local No. 26 v. City of Seattle*, 24 Wn. App. 462, 468-69, 604 P.2d 170 (1979) (ordinance may extend prohibition on unfair labor practices to practices not covered under state statute).

Although the state antidiscrimination law does not "authorize" religious groups to discriminate, it does "autho-

---

[9]The religious exemption has been part of the antidiscrimination statute since it was enacted. It has never been amended, although the section in which it is contained has been amended many times, and the Legislature twice has considered narrowing or deleting the exemption. *Farnam v. CRISTA Ministries*, 116 Wn.2d 659, 673 n.4, 807 P.2d 830 (1991) (citations omitted).

[10]None of the cases the City cites in support of its contention that no conflict exists where the local prohibitory scheme merely goes further than the state scheme analyzes a state law containing an express exemption. *See Rabon v. City of Seattle*, 135 Wn.2d at 288; *Brown*, 116 Wn.2d at 558; *Eze*, 111 Wn.2d at 33; *State ex rel. Schillberg v. Everett Dist. Justice Court*, 92 Wn.2d 106, 108, 594 P.2d 448 (1979); *Shin*, 50 Wn. App. at 221 n.3; *State v. Rabon*, 45 Wn. App. at 833 n.1.

rize" their exemption from the law's reach. The statutory language indicates an affirmative policy choice rather than an omission. Because the City's ordinance contravenes this policy choice, it must give way. *See Seattle Newspaper,* 24 Wn. App. at 469 (ordinance may be more restrictive than state statute *only if statute does not forbid the more restrictive enactment*) (emphasis added) (citing *Lenci v. City of Seattle,* 63 Wn.2d 664, 670-71, 388 P.2d 926 (1964)).

Affirmed.

BRIDGEWATER, C.J., and HUNT, J., concur.