770 A.2d 111

MONTROSE CHRISTIAN SCHOOL CORPORATION, et al.

v.

Sharon M. WALSH.

Montrose Christian School Corporation, et al.

v.

Barbara Anne Carver, et al.

Nos. 144, 147, Sept. Term, 1999.

Court of Appeals of Maryland.

April 12, 2001.

566

568

Craig L. Parshall, Fredericksburg, VA, David Pasti, Rockville, all on brief, for petitioners/cross–respondents in No. 144.

Arthur B. Spitzer, American Civil Liberties Union of the Nat. Capital Area (Elizabeth M. Boyle, on brief), Washington, DC. Judson P. Garrett, Jr., Principal Counsel for Opinions and Advice (Charles W. Thompson, Jr., County Atty., and Karen L. Federman Henry, Principal Counsel for Appeals, on brief), Rockville, for respondents/cross–petitioners in No. 144.

Gary Howard Simpson, Bethesda, on brief of MD Employment Lawyers Ass'n and Metropolitan Washington Employment Lawyers Ass'n, amici curiae, filed on behalf of appellants in No. 144.

John L. Cooley (VSB No. 25962) (pro hac vice), Wooten & Hart, P.C., Roanoke, VA, on brief of Ass'n of Christian Schools Intern., amicus curiae, filed on behalf of appellants in No. 144.

Mark N. Troobnick (DC Bar No. 420263) (pro hac vice), Colby M. May (DC Bar No. 394340), Washington, DC, (American Center for Law and Justice); Jay Alan Sekulow, Virginia Beach, VA (American Center for Law and Justice); Nicholas Miller, Executive Director, Rockville, MD (Council on Religious Freedom), on brief amici curiae of American Center for Law and Justice and Council on Religious Freedom in support of appellants in No. 144.

Paul D. Raschke, Alan A. Abramowitz, Robert H. Burrow, Bouland & Brush, LLC, Baltimore, on brief of amicus curiae Gen. Conference of Seventh Day Adventists filed on behalf of appellants in No. 144.

Craig L. Parshall, Fredericksburg, VA (pro hac vice), David Pasti, Rockville, all on brief, for appellants in No. 147.

Steven M. Schneebaum (Michael T. Wood and Vincente L. Martinez, Patton Boggs, LLP, all on brief), Washington, DC. Judson P. Garrett, Jr., Principal Counsel for Opinions and Advice (Charles W. Thompson, Jr., County Atty., and Karen L. Federman Henry, Principal Counsel for Appeals, all on brief), Rockville, for appellees in No. 147.

Glendora C. Hughes, Gen. Counsel, Elizabeth Colette, Asst. Gen. Counsel, MD Com'n on Human Relations, Baltimore, on brief of amicus curiae State of MD Com'n on Human Relations filed on behalf of appellees in No. 147.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY *, RAKER, WILNER, CATHELL and HARRELL, JJ.

ELDRIDGE, Judge.

Chapter 27 of the Montgomery County Code contains a comprehensive statutory scheme aimed at eliminating discrimination in the County in the areas of employment, housing, and public accommodation. Section 27–2 of the County Code creates the Montgomery County Human Relations Commission and provides for its jurisdiction. The County's general anti-discrimination policies, as well as the administration and duties of the Commission, are set out in §§ 27–1 through 27–7B. The remainder of Chapter 27 is divided into four parts, namely, discrimination in places of public accommodation (§§ 27–8 through 27–10), discrimination in real estate (§§ 27–11 through 27–16C), discrimination in employment (§§ 27–17 through 27–26), and intimidation (§§ 27–26A through H).

The two cases before this Court concern the third division, employment discrimination. Section 27–17 declares that it is Montgomery County's public policy "to foster equal employment opportunity for all without regard to race, color, religious creed, ancestry, national origin, sex, marital status, age, handicap, or sexual orientation and strictly in accord with their individual merits as human beings." Thus, § 27–19 provides in relevant part as follows (emphasis added):

"**Section 27–19. Unlawful Employment Practices.**

(a) It shall be an unlawful employment practice to do any of the following acts because of the race, color, religious

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

creed, ancestry, national origin, age, sex, marital status, handicap, or sexual orientation of any individual or because of any reason that would not have been asserted but for the race, color, religious creed, ancestry, national origin, age, sex, marital status, handicap, or sexual orientation of the individual:

(1) For an employer:

(a) To fail or refuse to hire or fail to accept the services of or to discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment.

\* \* \*

(d) Notwithstanding any other provision of this division, it shall not be an unlawful employment practice:

\* \* \*

(2) For a religious corporation, association or society to hire and employ employees of a particular religion *to perform purely religious functions."* (Emphasis added).

\* \* \*

The State Legislature, in Maryland Code (1957, 1998 Repl. Vol.), Art. 49B, § 42, has authorized a circuit court civil action for damages or other relief by "a person who is subjected to an act of discrimination prohibited by the [Montgomery] county code. . . ." The present cases were brought pursuant to Art. 49B, § 42.[1] The plaintiffs in these cases were employees of

---

1. Art. 49B, § 42, provides as follows:

 " **§ 42. Civil actions for discriminatory acts-Montgomery County, Prince George's County, and Howard County.**

 "(a) *Authorized.*—In Montgomery County, Prince George's County, and Howard County, in accordance with this subtitle, a person who is subjected to an act of discrimination prohibited by the county code may bring and maintain a civil action against the person who

Montrose Christian School, and they claimed that they were terminated by the school's principal on the basis of their religious creed in violation of the County's employment dis-

committed the alleged discriminatory act for damages, injunctive relief, or other civil relief.

"(b) *Limitations periods.*—(1) An action under subsection (a) of this section shall be commenced in the circuit court for the county in which the alleged discrimination took place not later than 2 years after the occurrence of the alleged discriminatory act.

"(2) Subject to the provisions of paragraph (1) of this subsection, an action under subsection (a) of this section alleging employment or public accommodation discrimination may not be commenced sooner than 45 days after the aggrieved person files a complaint with the county agency responsible for handling violations of the county discrimination laws.

"(3) Subject to the provisions of paragraph (1) of this subsection, an action under subsection (a) of this section alleging real estate discrimination may be commenced at any time.

"(c) *Fees and costs.*—In a civil action under this section, the court, in its discretion, may allow the prevailing party reasonable attorney's fees, expert witness fees, and costs."

Prior to the enactment of Article 49B, § 42, the Montgomery County Council had passed § 27–20(a) of the Montgomery County Code which purported to authorize a circuit court civil action for damages by any person who had "been subjected to any act of discrimination prohibited under this division...." In *McCrory Corp. v. Fowler*, 319 Md. 12, 570 A.2d 834 (1990), this Court held that § 27–20(a) of the Montgomery County Code was invalid under Article XI A of the Maryland Constitution because it was not a "local law" within the meaning of Article XI–A. We pointed out in *McCrory* that "the creation of new causes of action in the courts has traditionally been done either by the General Assembly or by this Court under its authority to modify the common law" and that "the creation of new judicial remedies has traditionally been done on a statewide basis." 319 Md. at 20, 570 A.2d at 838. We concluded in *McCrory* by holding "that an ordinance attempting to combat employment discrimination by creating a new private judicial cause of action is not a 'local law' under Article XI–A of the Maryland Constitution, and thus is not within the power of Montgomery County to enact." *See also Sweeney v. Hartz Mountain Corp.*, 319 Md. 440, 444, 573 A.2d 32, 34 (1990), invalidating a similar Howard County ordinance.

Article 49B, § 42, enacted in response to the *McCrory* and *Sweeney* decisions, applies only in three counties, namely Montgomery County, Prince George's County, and Howard County. A somewhat similar provision, Article 49B, § 43, authorizes a civil action in Baltimore County. The General Assembly does not appear to have enacted similar provisions applicable in the other counties or Baltimore City. No party in the present cases has raised any issue concerning the validity of § 42 under equal protection or other constitutional principles.

crimination law. The issues before us concern the monetary liability of the school and the principal under Art. 49B, § 42, and § 27–19 of the County Code.

## I.

This opinion encompasses two cases; consequently, we shall set forth the facts and procedural history of each case separately.

### A. No. 147, Montrose Christian School, et al. v. Carver

Montrose Christian School Corporation is a private, religious school affiliated with the Montrose Baptist Church in Montgomery County, Maryland. The school and the church operate on the same grounds for which only one sign, "Montrose Baptist Church," is displayed. The school provides education to children from kindergarten through twelfth grade. Enrollment is not limited to students whose families are members of the church or to students who are Baptist. The majority of students attending the school are not members of the church. Students belonging to a variety of religions and denominations attend the school.

According to the school's Articles of Incorporation and Bylaws, the Church Board of Deacons elects the School Board, all of whom are required to be members of the Church. The Pastor of the Church is an "ex officio" member of the School Board and is the supervisor of the school's principal. The Bylaws provide that the "Principal shall carry out the administration of the school under the direction of the Pastor."

Pastor Ray Hope became the new Pastor of the Church in February 1996. In June 1996, the school promoted defendant Gregory Scheck, formerly vice principal, to principal of the school. Changes in administrative policy at the school followed the change in pastors. All employees of the school who were not members of the Montrose Baptist Church, with the exception of two janitors, were discharged from employment.

The plaintiff Barbara Anne Carver began working for the school as a teacher's aide in 1990. At the time she was hired,

the school knew that she was not a member of the church and was not a Baptist. Carver's position required her to perform tasks such as copying, typing, grading papers, and generally assisting school staff and teachers in administrative ways. Carver is not a certified teacher, does not have a teaching degree, and has never been employed as a teacher. Carver was fired by the defendant Scheck in June 1996.

Carver filed a charge of employment discrimination with the Montgomery County Human Relations Commission, and more than 45 days passed without resolution of the charge. Carver then filed a complaint in the Circuit Court for Montgomery County against the school and Scheck alleging employment discrimination and seeking both damages and injunctive relief. Specifically, Carver alleged that the defendants fired her for the sole reason that she was not a member of the church and that firing her for that reason violated § 27–19 of the Montgomery County Code which prohibits employers from discriminating against employees on the basis of their religious creed.

In response, the defendants contended that their action fell within the exceptions to the employment discrimination law and, further, that they were immune from liability under the doctrine of charitable immunity.[2] The defendants also assert-

---

**2.** The defendants relied on the three exceptions, listed in § 27–19(d), which provide as follows (emphasis added):

"(d) Notwithstanding any other provision of this division, it shall not be an unlawful employment practice:

(1) For an employer to hire and employ employees, for an employment agency to classify or refer for employment any individual, for a labor organization to classify its membership or to classify or refer for employment any individual, or for an employer, labor organization or joint labor-management committee controlling apprenticeship or other training or retraining programs, to admit or employ any individual in any such program, on the basis of race, color, religious creed, age, sex, marital status, national origin, ancestry, handicap, or sexual orientation in those certain instances where such basis is a *bona fide occupational qualification* reasonably necessary to the normal operation of that particular business or enterprise;

(2) For a religious corporation, association or society to hire and employ employees of a particular religion to *perform purely religious functions;* and

ed that the application of Montgomery County's employment discrimination law to the school and Scheck violated the Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution, the guarantee of freedom of association under the First Amendment, and Article 36 of the Maryland Declaration of Rights. Moreover, the defendants argued that the County's law was preempted because the local law impermissibly conflicts with state law prohibiting employment discrimination. *See* Maryland Code (1957, 1998 Repl. Vol.), Art. 49B, § 18. Montgomery County intervened in the lawsuit for the purpose of defending the local law on constitutional and preemption grounds.

The Circuit Court resolved the action for damages in Carver's favor following a hearing on cross-motions for summary judgment based on stipulated facts. The court held that the defendants had engaged in an unlawful employment practice in violation of § 27–19 of the Montgomery County Code when they terminated Carver's employment because of her religious creed. The court determined that none of the statutory exceptions in § 27–19 applied to the defendants' conduct. The court further held that Montgomery County's employment discrimination law does not impermissibly conflict with state law. The Circuit Court also held that the application of § 27–19 to the defendants did not violate the First Amendment or the Maryland Constitution. Finally, the court ruled that the defendants were not entitled to the defense of charitable immunity. Judgment was entered awarding Carver $15,000.00 in damages and awarding $16,000.00 in attorneys' fees and costs, for a total of $31,000.00. The court denied the request for injunctive relief.

The defendants filed an appeal to the Court of Special Appeals. Before argument in the intermediate appellate

---

(3) For an employer to deny employment on the basis of religious creed in those cases when the observance, practice or belief cannot be reasonably accommodated by an employer without causing *undue hardship* on the conduct of the employer's business."

court, this Court issued a writ of certiorari. *Montrose Christian School v. Carver*, 358 Md. 162, 747 A.2d 644 (2000).

### B. No. 144, Montrose Christian School, et al. v. Walsh, et al.

In 1979, the plaintiff Mary Lou Jones began working at the school as the bookkeeper and the principal's secretary. The school hired the plaintiff Sharon M. Walsh in 1982 for a secretarial position handling registration-type duties and general administrative tasks. The plaintiff Helen E. Poole was hired as a cafeteria worker in 1989. Poole's duties included planning menus, ordering food, preparing meals, and cleaning up. The three plaintiffs are not members of the church and are not Baptists. Scheck terminated the employment of each of the plaintiffs in June 1996.

The plaintiffs filed a complaint with the Montgomery County Human Relations Commission charging the school and Scheck with employment discrimination based on religious creed in violation of § 27–19. More than 45 days passed without resolution of the administrative complaint, and the plaintiffs then filed an action in the Circuit Court for Montgomery County, seeking damages and injunctive relief against the school and Scheck.

In response to the plaintiffs' discrimination claims, the defendants asserted the same defenses described in the *Carver* case discussed above. Also, as in the *Carver* case, Montgomery County intervened in the Circuit Court for the purpose of defending the validity of the Montgomery County law.

The defendants filed a motion for summary judgment based on the exceptions under the Montgomery County Code, the constitutional issues, the question of preemption by conflict, and charitable immunity. The Circuit Court denied the summary judgment motion. The court did grant a motion by the plaintiffs to exclude evidence relating to the "bona fide occupational qualification" and "undue hardship" exceptions in the local law, thus preventing the defendants from asserting those defenses at trial. *See* § 27–19(d)(1) and (3).

After the presentation of evidence relating to the reasons for terminating the plaintiffs' employment, the jury found that each of the plaintiffs had been terminated by the school and by Scheck because of their religious creed. Compensatory damages were awarded to each of the three plaintiffs. Subsequently, the Circuit Court filed an opinion holding that the local law did not conflict with state law and that the application of § 27–19 to the conduct of the defendants did not violate the Establishment Clause, the Free Exercise Clause, or the guarantee of freedom of association under the First Amendment. The court further held that there was no violation of Article 36 of the Maryland Declaration of Rights. In rejecting the constitutional defenses, the court stated that it was persuaded by the evidence which indicated that "the duties of the plaintiffs were not the formulation or implementation of policy nor were they educational or instructive in nature, but rather administrative and ministerial." The court did hold that the school was entitled to charitable immunity but that such immunity did not extend to Scheck. In accordance with the jury's verdicts, judgments for compensatory damages, in various amounts, were rendered for each of the three plaintiffs against Scheck. The court denied the request for injunctive relief.

Both the defendants and the plaintiffs appealed to the Court of Special Appeals.[3] Prior to argument in the intermediate

---

3. The appeal taken by the Montrose Christian School in Case No. 144 was inappropriate because the judgment was entirely in its favor based on the Circuit Court's charitable immunity holding. What this Court said in *Offutt v. Montgomery Co. Bd. of Ed.*, 285 Md. 557, 564 n. 4, 404 A.2d 281, 285 n. 4 (1979), is applicable here:

"It should be pointed out that, as a procedural matter, the cross-appeal in this case does not properly lie. Although the defendant School Board may not like the language in the trial court's opinion stating that the Board bargained in bad faith, the final judgment of the trial court, by denying any relief to the plaintiffs, is entirely in the School Board's favor. It is established as a general principle that only a party aggrieved by a court's judgment may take an appeal and that one may not appeal or cross-appeal from a judgment wholly in his favor." [Citations omitted]

appellate court, the plaintiffs filed in this Court a petition for a writ a certiorari and the defendants filed a cross-petition for a writ of certiorari. We granted both the petition and the cross-petition. *Walsh v. Montrose Christian School,* 357 Md. 481, 745 A.2d 436 (2000).

The parties in both cases present substantially the same issues for appellate review. We restate the three principal questions as follows:

I. Whether § 27–19 of the Montgomery County Code is in conflict with, and thus preempted by, Maryland Code (1957, 1998 Repl.Vol.), Art. 49B, § 18;

II. Whether the doctrine of charitable immunity precludes the award of damages against the school and Scheck;

III. Whether § 27–19 of the Montgomery County Code violates the First Amendment to the United States Constitution or Article 36 of the Maryland Declaration of Rights.

If the defendants prevail under either the first or the second of the questions set forth above, it would not be necessary for us to reach the constitutional issues in the third question. Consistent with the " 'principle that a court will not decide a constitutional issue when a case can properly be disposed of on a non-constitutional ground,' " [4] we shall first consider the conflict and charitable immunity issues.

---

"Where a party has an issue resolved adversely in the trial court, but like the School Board here receives a wholly favorable judgment on another ground, that party may, as an appellee and without taking a cross-appeal, argue as a ground for affirmance the matter that was resolved against it at trial." [Citations omitted]
*See, e.g., Boitnott v. Baltimore,* 356 Md. 226, 233–234 n. 7, 738 A.2d 881, 885 n. 7 (1999); *Insurance Commissioner v. Equitable,* 339 Md. 596, 612 n. 8, 664 A.2d 862, 870 n. 8 (1995); *Paolino v. McCormick & Co.,* 314 Md. 575, 579, 552 A.2d 868, 870 (1989) ("an appeal or cross appeal is impermissible from a judgment wholly in a party's favor"). *See also* the discussions in *Auto. Trade Ass'n v. Harold Folk Enter.,* 301 Md. 642, 648–649, 484 A.2d 612, 615 (1984); *Joseph H. Munson Co. v. Sec. of State,* 294 Md. 160, 167–168, 448 A.2d 935, 939–940 (1982), *affirmed,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984).

4. *Baltimore Sun v. Baltimore,* 359 Md. 653, 659, 755 A.2d 1130, 1133–1134 (2000), quoting *Telnikoff v. Matusevitch,* 347 Md. 561, 579 n. 15,

## II.

Montgomery County has charter home rule under the Home Rule Amendment, Article XI A of the Maryland Constitution. *See, e.g., Save Our Streets v. Mitchell,* 357 Md. 237, 246–249, 743 A.2d 748, 753–755 (2000); *Haub v. Montgomery County,* 353 Md. 448, 450, 727 A.2d 369–370 (1999); *McCrory v. Fowler,* 319 Md. 12, 16, 570 A.2d 834, 835 (1990). The Home Rule Amendment enables those counties adopting a home rule charter to enjoy a significant amount of self-governance by transferring the General Assembly's power to enact many types of public local laws to the home rule counties themselves. Nevertheless, under Article XI–A, § 1, "[a] local government ordinance which conflicts with a public general law enacted by the General Assembly is preempted and thus is invalid." *Coalition v. Annapolis Lodge,* 333 Md. 359, 379, 635 A.2d 412, 422 (1994).

The defendants in the instant cases argue that § 27–19 of the Montgomery County Code is preempted by Maryland Code (1957, 1998 Repl.Vol.), Art. 49B, § 18, because the County's employment discrimination law does not provide a broad exemption from coverage for religious organizations such as is afforded under state and federal anti-discrimination laws. Specifically, the defendants assert that § 27–19 of the County Code, prohibiting religious organizations from discriminating in employment on the basis of religious creed, fatally conflicts with state law which contains no such prohibition.[5]

The State's employment discrimination law is codified at Maryland Code (1957, 1998 Repl.Vol.), Art. 49B, §§ 14 through 18. In contrast to the Montgomery County Code, the

---

702 A.2d 230, 239 n. 15 (1997). *See also Harryman v. State,* 359 Md. 492, 503 n. 6, 754 A.2d 1018, 1024 n. 6 (2000), and cases there cited.

**5.** As this Court has noted, "state law may preempt local law in one of three ways: 1) preemption by conflict, 2) express preemption, or 3) implied preemption." *Talbot County v. Skipper,* 329 Md. 481, 487–488, 620 A.2d 880, 883 (1993). The defendants here urge preemption by conflict only.

state law exempts religious organizations from the prohibition against religious creed discrimination. Art. 49B, § 18, states:

"This subtitle shall not apply to an employer with respect to the employment of aliens outside of the State, or to a religious corporation, association, educational institution or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution or society of its activities."

The state statute was modeled after the federal anti-discrimination law, *Molesworth v. Brandon*, 341 Md. 621, 632, 672 A.2d 608, 614 (1996), providing the same broad exemption for religious organizations. *See* 42 U.S.C. § 2000e *et seq.* Thus, the state law, like its federal counterpart, does not prohibit discrimination by religious organizations based on religious creed. According to the defendants, this exemption in the state statute means that the local law and state law are in conflict.[6]

The controlling Maryland principle in determining preemption by conflict was set forth in *Talbot County v. Skipper*, 329 Md. 481, 487 n. 4, 620 A.2d 880, 882 n. 4 (1993), as follows:

"A local ordinance is pre-empted by conflict when it prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law."

*See Soaring Vista Properties v. Queen Anne's County*, 356 Md. 660, 741 A.2d 1110 (1999); *Holiday v. Anne Arundel*, 349 Md. 190, 210, 707 A.2d 829, 839 (1998); *Coalition v. Annapolis Lodge, supra*, 333 Md. at 380, 635 A.2d at 422; *Allied Vending v. Bowie*, 332 Md. 279, 297 n. 12, 631 A.2d 77, 86 n. 12 (1993).

Although discrimination by religious organizations on the basis of religious creed is not covered by state law, this Court has held that noncoverage does not mean that such activity is

---

6. The defendants do not, however, argue that the local law is in conflict with, or preempted by, the federal statutory provisions.

authorized by the state statute. In *Annapolis Lodge,* 333 Md. at 380, 635 A.2d at 422, we said:

"[O]ur cases have recognized a distinction between a state law which is intended to permit or authorize a particular matter and a state law which is simply intended to exempt the particular matter from its coverage. When a state law simply excludes a particular activity from its coverage, our cases have not attributed to the General Assembly an intent to preempt local legislation regulating or prohibiting that activity. Instead, in such situations supplementary local legislation has not been deemed to be in conflict with and preempted by the state statute."

*See Holiday v. Anne Arundel, supra,* 349 Md. at 211 n. 6, 707 A.2d at 840 n. 6 ("When state law simply regulates a matter to a limited extent, our cases have not ordinarily attributed to the General Assembly an intent to preempt local law regulating the matter to a greater extent"); *Molesworth v. Brandon, supra,* 341 Md. at 636, 672 A.2d at 615–616; *National Asphalt v. Prince George's County,* 292 Md. 75, 80–81, 437 A.2d 651, 654 (1981); *City of Baltimore v. Sitnick,* 254 Md. 303, 324, 255 A.2d 376, 385–386 (1969).[7]

■ The state employment discrimination law simply excludes religious organizations from coverage of the religious creed anti-discrimination provision in the state statute. Instead of constituting an affirmative authorization to discriminate, Article 49B, § 18, merely removes religious organizations from the scope of the state law with regard to religious creed discrimination. Under the above-cited cases, there is no conflict between Art. 49B, § 18, and § 27–19 of the Montgomery County Code.

### III.

As previously stated, the Circuit Court in No. 147 ruled that neither the school nor Scheck was entitled to the defense of

---

7. Some courts in other jurisdictions appear to adopt a contrary position on this issue. *See, e.g., City of Tacoma v. Franciscan Foundation,* 94 Wash.App. 663, 972 P.2d 566 (1999).

charitable immunity with regard to their statutory liability for damages. In No. 144, however, the Circuit Court held that the defendant school was immune from liability because of charitable immunity. The court further held that the defendant Scheck could not avail himself of the defense of charitable immunity. In this Court, the defendants argue that both the school and Scheck are entitled to the defense of charitable immunity. The plaintiffs urge that the common law doctrine of charitable immunity is not a defense to liability imposed by statute, and that the Circuit Court erred in No. 144 by holding that the defense of charitable immunity protected the school. We agree with the plaintiffs.

 The doctrine of charitable immunity was first recognized in Maryland in *Perry v. House of Refuge,* 63 Md. 20 (1885), and has been reaffirmed by this Court in a line of decisions. *See Abramson v. Reiss,* 334 Md. 193, 197, 206–209, 638 A.2d 743, 744–745, 749–751 (1994), and cases there cited. This judge-made doctrine is intended to protect charitable organizations from tort liability. Under Maryland law, charitable immunity is premised on the trust fund theory, that is, because funds of the organization are impressed with a trust for charitable purposes, those funds should not be diverted to pay tort damage awards. *See Loeffler v. Trustees of Sheppard & Enoch Pratt Hospital,* 130 Md. 265, 100 A. 301 (1917).

 We assume, *arguendo,* that the school is a bona fide charitable organization for the purpose of the doctrine of charitable immunity. *See Abramson v. Reiss, supra,* 334 Md. at 200–201, 638 A.2d at 746–747; *James v. Prince George's County,* 288 Md. 315, 336–337, 418 A.2d 1173, 1185 (1980). Nevertheless, the defense is not available to shelter the school or Scheck from liability imposed by the Montgomery County employment discrimination law and Art. 49B, § 42.

 As pointed out above, the charitable immunity defense applies only to tort actions. Except for wrongful or abusive discharge actions pursuant to *Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981), actions for damages based on the termination of employment relation-

ships, including those regulated by statutes, ordinarily sound in contract and not in tort. *See generally, Montgomery County v. Broadcast Equities, Inc.*, 360 Md. 438, 444–445, 758 A.2d 995, 998–999 (2000); *Suburban Hospital v. Dwiggins*, 324 Md. 294, 303–308, 596 A.2d 1069, 1073–1076 (1991); *Finch v. Holladay–Tyler Printing, Inc.*, 322 Md. 197, 202–206, 586 A.2d 1275, 1278–1280 (1991); *Chappell v. Southern Maryland Hosp.*, 320 Md. 483, 493, 578 A.2d 766, 772 (1990); *Makovi v. Sherwin–Williams Co.*, 316 Md. 603, 625–626, 561 A.2d 179, 190 (1989); *Ewing v. Koppers Co.*, 312 Md. 45, 49, 537 A.2d 1173, 1174–1175 (1988). *See also McMillan v. Massachusetts Society for the Prevention of Cruelty to Animals*, 140 F.3d 288, 307 (1st Cir.1998) (cause of action based on Massachusetts anti-discrimination statute is not based on tort); *Blake v. Katter*, 693 F.2d 677, 683 (7th Cir.1982) (civil rights claims are not properly characterized as common law torts). Since the doctrine of charitable immunity applies only in tort actions, and since the cases at bar sound in contract, the charitable immunity defense is inapplicable.

■ Moreover, even if a statutory employment discrimination action were characterized as a tort suit, charitable immunity cannot be used to shield liability where the common law has been modified by legislation permitting actions against charitable organizations. *See, e.g., Abramson v. Reiss, supra,* 334 Md. at 207–209, 638 A.2d at 750–751 (extent of charitable immunity is a matter for the legislature); *Howard v. Bishop Byrne Council Home,* 249 Md. 233, 236, 241, 238 A.2d 863, 864, 867–868 (1968) (review of statutes limiting charitable immunity); *Howard v. South Baltimore General Hospital,* 191 Md. 617, 619–620, 62 A.2d 574, 575 (1948).

The Montgomery County Council, by enacting § 27–19 of the Montgomery County Code, explicitly extended coverage of the statute to include the employment activities of charitable organizations such as the school. *See* § 27–19(d)(2) (referring to a religious corporation, association or society as an employer) and § 27–19(f)(2) (referring to positions of employment in a religious school). Section 27–19 of the Montgomery County

Code, together with Art. 49B, § 42, of the Maryland Code, clearly abrogate any charitable immunity that might otherwise have existed in cases like the present ones.

## IV.

In light of our holdings that § 27-19 of the Montgomery County Code does not conflict with Art. 49B, § 18, of the Maryland Code, and that the defense of charitable immunity is not applicable in these cases, it becomes necessary to consider the constitutionality of § 27-19(d)(2).

As earlier discussed, § 27-19(a) of the Montgomery County Code makes it unlawful, *inter alia,* for an employer "to discharge any individual" "because of ... religious creed...." Section 27-19(d)(2), however, contains an exception to this prohibition which allows "religious" organizations to employ persons "of a particular religion." Nevertheless, the last five words of § 27-19(d)(2) limit the exception to employees hired "to perform purely religious functions." Consequently, because of this limitation, churches, religious schools, and other religious organizations in Montgomery County are expressly prohibited from making employment decisions based on "religious creed" except for employees hired to perform *purely* religious functions.

■■ We shall hold that the limitation in § 27-19(d)(2), "to perform purely religious functions," on its face violates the Free Exercise Clause of the First Amendment and Article 36 of the Maryland Declaration of Rights. We shall further hold that the limitation is severable from the remaining language of § 27-19(d)(2). As a result, the viable portion of § 27-19(d)(2) will provide that "it shall not be an unlawful employment practice * * * [f]or a religious corporation, association, or society to hire and employ employees of a particular religion." Because the defendants' conduct was permitted by the valid portion of the § 27-19(d)(2) exception, we shall reverse the judgments below.

## A.

The First Amendment to the United States Constitution declares, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." The religion clauses of the First Amendment are, of course, applicable to the states and their political subdivisions by virtue of the Fourteenth Amendment. *See, e.g., Employment Div., Ore. Dept. of Human Res. v. Smith,* 494 U.S. 872, 876–877, 110 S.Ct. 1595, 1599, 108 L.Ed.2d 876, 884 (1990); *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1217–1218 (1940); *Levitsky v. Levitsky,* 231 Md. 388, 396–397, 190 A.2d 621, 625 (1963); *Craig v. State,* 220 Md. 590, 599, 155 A.2d 684, 690 (1959); *Hopkins v. State,* 193 Md. 489, 496, 69 A.2d 456, 459 (1949). The free exercise guarantee of the Maryland Constitution is in Article 36 of the Declaration of Rights, which provides that

"... all persons are equally entitled to protection in their religious liberty; wherefore, no person ought by any law to be molested in his person or estate, on account of his religious persuasion, or profession, or for his religious practice, unless, under the color of religion, he shall disturb the good order, peace or safety of the State, or shall infringe the laws of morality, or injure others in their natural, civil or religious rights; nor ought any person to be compelled to frequent, or maintain, or contribute, unless on contract, to maintain, any place of worship, or any ministry...." [8]

The Free Exercise Clause of the First Amendment and Article 36 of the Maryland Declaration of Rights ordinarily do not grant to an individual or a religious organization "a constitutional right to ignore neutral laws of general applicability" even when such laws have an incidental effect of burdening a particular religious activity. *City of Boerne v.*

---

**8.** While the liberty to worship freely is embodied in the Maryland Declaration of Rights, the Maryland Constitution contains no express proscription against governmental "establishment" of religion. *Barghout v. Mayor,* 325 Md. 311, 327, 600 A.2d 841, 848 (1992).

*Flores,* 521 U.S. 507, 513, 117 S.Ct. 2157, 2161, 138 L.Ed.2d 624, 634 (1997). The Supreme Court explained in *Church of the Lukumi Babalu Aye v. Hialeah,* 508 U.S. 520, 531, 113 S.Ct. 2217, 2226, 124 L.Ed.2d 472, 489 (1993):

> "In addressing the constitutional protection for free exercise of religion, our cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."

*See, e.g., Employment Div., Ore. Dept. of Human Res. v. Smith, supra,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876; *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Levitsky v. Levitsky, supra,* 231 Md. at 396–397, 190 A.2d at 625; *Craig v. State, supra,* 220 Md. at 599, 155 A.2d at 689.

Although religious *activities* may ordinarily be subject to neutral laws of general applicability, "the First Amendment obviously excludes all 'governmental regulation of religious *beliefs* as such.' " *Employment Div., Ore. Dept. of Human Res. v. Smith, supra,* 494 U.S. at 877, 110 S.Ct. at 1599, 108 L.Ed.2d at 884, quoting *Sherbert v. Verner,* 374 U.S. 398, 402, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965, 969 (1963).

Furthermore, under the Free Exercise Clause, laws targeting particular religious practices, or selectively imposing burdens on conduct motivated by religious belief, are subject to strict scrutiny, and "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Church of the Lukumi Babalu Aye v. Hialeah, supra,* 508 U.S. at 531–532, 113 S.Ct. at 2226, 124 L.Ed.2d at 489. Moreover, even laws which are neutral and generally applicable have "failed to pass constitutional muster" under the Free Exercise Clause when "other constitutional protections were at stake." *City of Boerne v. Flores, supra,* 521 U.S. at 513–514, 117 S.Ct. at 2161, 138 L.Ed.2d at 634.

In addition, and particularly applicable to the cases at bar, is the principle set forth in *Kedroff v. St. Nicholas Cathedral*

*of Russian Orthodox Church*, 344 U.S. 94, 116, 73 S.Ct. 143, 154–155, 97 L.Ed. 120, 136–137 (1952), that the Free Exercise Clause reflects

"a spirit of freedom for religious organizations, an independence from secular control or manipulation—in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine. Freedom to select the clergy, where no improper methods of choice are proven, we think, must now be said to have federal constitutional protection as a part of the free exercise of religion against state interference."

In *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490, 504, 99 S.Ct. 1313, 1320, 59 L.Ed.2d 533, 543 (1979), the Supreme Court, holding that the National Labor Relations Act did not apply to teachers in church-operated schools, and that the National Labor Relations Board had no jurisdiction over such teachers, explained:

"The church-teacher relationship in a church-operated school differs from the employment relationship in a public or other nonreligious school. We see no escape from conflicts flowing from the Board's exercise of jurisdiction over teachers in church-operated schools and the consequent serious First Amendment questions that would follow."

*See, e.g., Downs v. Roman Catholic Archbishop of Baltimore*, 111 Md.App. 616, 622, 683 A.2d 808, 811 (1996) ("matters of church ... governance" may be beyond the authority of a court to adjudicate); *Gellington v. Christian Methodist Episcopal Church*, 203 F.3d 1299, 1304 (11th Cir.2000) ("Churches are to be free from government interference in matters of church governance and administration"); *Bollard v. California Province of Society of Jesus*, 196 F.3d 940, 945 (9th Cir.1999) ("The Free Exercise Clause restricts the government's ability to intrude into ecclesiastical matters or to interfere with a church's governance of its own affairs"); *Combs v. Central Texas Annual Conference United Methodist Church*, 173 F.3d 343, 348 (5th Cir.1999) (referring to "the Free Exercise Clause's protection to a church against government encroachment into the church's internal management");

*E.E.O.C. v. Catholic University of America,* 83 F.3d 455, 463 (D.C.Cir.1996) ("the Free Exercise Clause guarantees a church's freedom to decide how it will govern itself").

A uniform line of cases applying this principle, namely that the free exercise guarantee limits governmental interference with the internal management of religious organizations, compels the conclusion that § 27–19(d)(2) of the Montgomery County Code is invalid under the Free Exercise Clause of the First Amendment and Article 36 of the Maryland Declaration of Rights. Most of these cases have arisen under a federal statute, Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000e *et seq.*

Title VII makes it an unlawful employment practice to discriminate on the basis of race, color, religion, sex, or national origin. Originally, Title VII exempted from its prohibition against employment discrimination, based on religion, the employment by religious organizations of persons "to perform work connected with the carrying on" of the employer's "religious activities." 42 U.S.C. § 2000e–1 (1964). Congress amended Title VII in 1972, broadening the exemption for religious employers by deleting the adjective "religious" which had modified "activities." [9] The legislative history of

---

**9.** Similar to the Maryland state law, § 42 U.S.C.2000e–1(a) now provides:

"This title shall not apply to an employer with respect to the employment of aliens outside any State, or to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities."

Section 42 U.S.C. § 2000e–2(e) clarifies the exemption as it applies to religious schools, providing:

"(2) it shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or

the amendment stresses the congressional motivation to foster the separation between church and state. As co-sponsor of the Amendment, Senator Sam Ervin remarked: "this amendment is to take the political hands of Caesar off the institutions of God, where they have no place to be." 118 Cong. Rec. 4503 (1972).

In *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327, 336, 107 S.Ct. 2862, 2868, 97 L.Ed.2d 273, 283 (1987), the Supreme Court "assume[d] for the sake of argument that the pre 1972 exemption [in Title VII] was adequate in the sense that the Free Exercise Clause required no more." The Court, however, continued (483 U.S. at 336, 107 S.Ct. at 2868, 97 L.Ed.2d at 283, footnote omitted):

> "Nonetheless, it is a significant burden on a religious organization to require it, on pain of substantial liability, to predict which of its activities a secular court will consider religious. The line is hardly a bright one, and an organization might understandably be concerned that a judge would not understand its religious tenets and sense of mission. Fear of potential liability might affect the way an organization carried out what it understood to be its religious mission.
>
> "After a detailed examination of the legislative history of the 1972 amendment, the District Court concluded that Congress' purpose was to minimize governmental 'interfer[ence] with the decision-making process in religions.' . . . We agree with the District Court that this purpose does not violate the Establishment Clause."

Later, the Court in *Amos* reiterated that the 1972 amendment, "expanding the . . . exemption to cover all activities of religious employers," was "motivated by a permissible purpose of limiting governmental interference with the exercise of religion. . . ." 483 U.S. at 339, 107 S.Ct. at 2870, 97 L.Ed.2d at 285.

---

institution of learning is directed toward the propagation of a particular religion."

It should be noted that Title VII's pre–1972 exemption for religious creed-based employment discrimination by religious organizations, which the Supreme Court and Congress indicated might be suspect under the Free Exercise Clause, was broader than the exemption in § 27–19(d)(2) of the Montgomery County Code. The pre–1972 Title VII provision authorized religious organizations to employ persons "of a particular religion to perform work connected with the carrying on" of the employer's "religious activities." Section 27–19(d)(2), however, only allows religious organizations to employ persons "of a particular religion to perform purely religious functions." There is a difference between work "connected with the carrying on" of religious activities and the narrower "perform[ance]" of religious functions. More importantly, there is a large difference between "religious activities" and *purely* religious functions."

Although Title VII, as amended in 1972, exempts religious organizations from the prohibition against employment discrimination based on religious creed, the provisions of Title VII proscribing employment discrimination based on race, color, sex, or national origin are literally applicable to religious organizations. Nevertheless, the courts have consistently held that the Free Exercise Clause of the First Amendment precludes the application of these Title VII provisions to employment decisions by religious organizations concerning ministers, teachers, and other employees whose duties are "integral to the spiritual and pastoral mission" of the religious organization. *E.E.O.C. v. Roman Catholic Diocese of Raleigh, N.C.,* 213 F.3d 795, 797 (4th Cir.2000).

■ This constitutionally-required exception to Title VII has been called the "ministerial exception to Title VII," although it applies to other employees in addition to ministers. It is applicable to any employee of a religious organization whose " 'primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship,' " *E.E.O.C. v. Roman Catholic Diocese of Raleigh, N.C., supra,*

213 F.3d at 801, quoting *Rayburn v. General Conf. of Seventh–Day Adventists,* 772 F.2d 1164, 1169 (4th Cir.1985). In *Roman Catholic Diocese of Raleigh,* 213 F.3d 795, the United States Court of Appeals for the Fourth Circuit applied the "ministerial exception" to a music teacher at a church-affiliated elementary school, holding that the Free Exercise Clause compelled the dismissal of her Title VII action against the religious organization based on alleged gender discrimination.

The constitutionally-compelled "ministerial exception" to Title VII was first recognized by the United States Court of Appeals for the Fifth Circuit in *McClure v. Salvation Army,* 460 F.2d 553 (5th Cir.1972), where the court affirmed the dismissal of a Title VII action against the Salvation Army by an officer of the Salvation Army who claimed that she had been discriminated against because of her gender. Relying upon *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church, supra,* 344 U.S. at 116, 73 S.Ct. at 154, 97 L.Ed. at 136, where the Supreme Court had stated that religious organizations must have the "power to decide for themselves, free from state interference, matters of church government," the court in *McClure* concluded (460 F.2d at 560):

> "We find that the application of the provisions of Title VII to the employment relationship existing between The Salvation Army and Mrs. McClure, a church and its minister would result in an encroachment by the State into an area of religious freedom which it is forbidden to enter by the principles of the free exercise clause of the First Amendment."

Subsequent cases have consistently followed the holding in *McClure* and applied the "ministerial exception." *See, e.g., Gellington v. Christian Methodist Episcopal Church, supra,* 203 F.3d at 1303–1304 (governmental "interference with a church's ability to select and manage its own clergy" would violate both the Free Exercise Clause and the Establishment Clause of the First Amendment); *Bollard v. California Province of Society of Jesus, supra,* 196 F.3d at 946 ("A church's selection of its own clergy is one such core matter of ecclesiastical self-governance with which the state may not constitu-

tionally interfere"); *Combs v. Central Texas Annual Conference United Methodist Church, supra,* 173 F.3d at 350 ("we cannot conceive how the ... judiciary could determine whether an employment decision concerning a minister was based on legitimate or illegitimate grounds without inserting ourselves into a realm where the Constitution forbids us to tread, the internal management of a church"); *Bell v. Presbyterian Church,* 126 F.3d 328, 331 (4th Cir.1997) ("It has thus become established that the decisions of religious entities about the appointment and removal of ministers and persons in other positions of similar theological significance are beyond the ken of civil courts"); *E.E.O.C. v. Catholic University of America, supra,* 83 F.3d at 461 (upholding the dismissal of a Title VII action against a university by a teacher who alleged that she was denied tenure because of her gender, with the court observing that "[t]he ministerial exception has not been limited to members of the clergy"); *Young v. Northern Illinois Conf. of United Methodist Church,* 21 F.3d 184, 187 (7th Cir.), *cert. denied,* 513 U.S. 929, 115 S.Ct. 320, 130 L.Ed.2d 281(1994) ("the Free Exercise Clause of the First Amendment forbids a review of a church's procedures when it makes employment decisions affecting its clergy"); *Little v. Wuerl,* 929 F.2d 944, 951 (3rd Cir.1991) (a parochial school teacher, who was discharged because of her remarriage, could not maintain a Title VII action against the school); *Scharon v. St. Luke's Episcopal Presbyterian Hosp.,* 929 F.2d 360 (8th Cir. 1991) (a chaplain at a church-affiliated hospital, who was allegedly discharged because of her gender and age, could not maintain a Title VII action against the hospital); *Rayburn v. General Conf. of Seventh–Day Adventists, supra,* 772 F.2d at 1168 ("The 'ministerial exception' to Title VII ... does not depend upon ordination but upon the function of the position"); *E.E.O.C. v. Southwestern Baptist Theological Seminary,* 651 F.2d 277, 284 (5th Cir.1981), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1749, 72 L.Ed.2d 161 (1982) (*McClure* establishes that Title VII does not apply to the employment relationship between this Seminary and its faculty).

In addition to the cases involving Title VII, state courts, relying on the free exercise guarantees of the federal and state constitutions, have recognized a similar "ministerial exception" in actions under state laws proscribing discrimination in employment. *See, e.g., Madsen v. Erwin,* 395 Mass. 715, 722–726, 481 N.E.2d 1160, 1165–1166 (1985); *Jocz v. Labor and Industry Review Commission and Sacred Heart School,* 196 Wis.2d 273, 538 N.W.2d 588 (Wisc.App.1995). *See also* Douglas Laycock, *Toward a General Theory of the Religion Clauses: The Case of Church Labor Relations and the Right to Church Autonomy,* 81 Col. L.Rev. 1373, 1408–1409 (1981), where one commentator described the relationship between religious organizations and their employees as follows (footnotes omitted):

"The free exercise of religion includes the right to run large religious institutions—certainly churches, seminaries, and schools, and . . . other charitable institutions as well. Such institutions can only be run through employees. It follows at the very least that the free exercise of religion includes the right of churches to hire employees. It surely also follows that the churches are entitled to insist on undivided loyalty from these employees.

"The employee accepts responsibility to carry out part of the religious mission. . . . [C]hurches rely on employees to do the work of the church and to do it in accord with church teaching. When an employee agrees to do the work of the church, he must be held to submit to church authority in much the same way as a member.

"It follows that church labor relations are internal affairs, and the state's interest in interfering to protect employees must be judged accordingly. The state may not intervene to protect employees from treatment that is merely arbitrary or unfair; the remedy for that is to resign or renegotiate the terms of employment. Modern labor legislation may have deprived secular employers of the fiduciary duty once owed them by their rank and file employees, but to deprive churches of that duty would be to interfere with an interest protected by the free exercise clause."

 Turning to § 27–19(d)(2) of the Montgomery County Code, it is obvious that the provision effectively contains no exemption allowing religious organizations to employ only persons of a particular religion. Although the first sixteen words of § 27–19(d)(2) ostensibly allow religious organizations "to hire and employ employees of a particular religion," the next five words limit the authorization to the hiring of employees "to perform purely religious functions." The limitation effectively nullifies the exemption. It is doubtful that any employees of religious organizations in Montgomery County perform *purely* religious functions. Even ministers, pastors, priests, rabbis, and other theological heads of religious organizations occasionally perform functions which would not ordinarily be characterized as "religious." Many other employees of religious organizations, such as teachers, may perform both religious and non-religious functions. Nonetheless, as shown by the previously discussed cases, the constitutional free exercise guarantee restricts governmental interference with a religious organization's hiring and firing of employees who are involved in the religious activities of the organization.

Apparently recognizing the constitutional problems with the "to perform purely religious functions" limitation in § 27–19(d)(2), Montgomery County argues that "the term 'purely religious functions' should be read to mean 'primarily ministerial duties.'" (Montgomery County's brief in No. 147, at 14 n. 17). The County relies on the principle that a court should "'construe'" a statute "'so as to avoid conflict with the Constitution....'" (*Id.* at 14–15 n. 17). The plaintiffs suggest that the language should be construed to mean "some significant functions" that are religious. (Plaintiffs' brief in No. 144, at 16 n. 4).

The principle of statutory construction relied on by Montgomery County is that "'a construction of a statute, giving rise to doubts as to its constitutionality, should be avoided *if the language permits.*'" *Davis v. State,* 294 Md. 370, 377, 451 A.2d 107, 111 (1982), quoting *Baltimore County v. Mo. Realty,* 219 Md. 155, 159, 148 A.2d 424, 427 (1959) (emphasis in the *Davis* opinion). *See also Becker v. State,* 363 Md. 77, 767 A.2d

816 (2001), and cases there cited. In *Davis v. State, supra,* 294 Md. at 378, 451 A.2d at 111, we declined to construe a state statute so as to avoid holding it unconstitutional under the Establishment Clause of the First Amendment because "[t]he construction of [the statute] urged by the petitioner Davis ... is not permitted by the statutory language." In *Davis,* which involved a statutory exemption from the compulsory immunization law for pupils in elementary schools, the Court continued (*ibid.*):

> "The General Assembly expressly limited the exemption to members or adherents of a recognized church or religious denomination opposing immunization. To excise the phrase 'the tenets and practice of a recognized church or religious denomination of which he is an adherent or member,' and insert the phrase 'his religious beliefs,' as contended for by the petitioner, would be to re-draft the statute under the guise of construction. In the language of Justice Harlan dealing with a similar contention, it would be 'to assume an Alice in Wonderland world where words have no meaning,' *Welsh v. United States,* 398 U.S. 333, 354, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) (concurring opinion). This we decline to do."

Similarly, in the cases at bar, to substitute the phrases "to perform *primarily* ministerial duties" or "to perform *some* religious functions" for the statutory language "to perform *purely* religious functions," would also "be to re-draft the [ordinance] under the guise of construction." *Davis,* 294 Md. at 378, 451 A.2d at 111. The statutory phrase "to perform purely religious functions" clearly does not mean what is suggested by Montgomery County or by the plaintiffs. We decline to construe "purely" as if it were "primarily" or "some." *See also, e.g., Wheeler v. State,* 281 Md. 593, 598, 380 A.2d 1052, 1055 (1977), *cert. denied,* 435 U.S. 997, 98 S.Ct. 1650, 56 L.Ed.2d 86 (1978) ("We are not at liberty to bring about a different [constitutionality] result by inserting or omitting words to make the statute express an intention not evidenced in its original form"); *Slate v. Zitomer,* 275 Md. 534, 544, 341 A.2d 789, 795 (1975), *cert. denied sub nom. Gaspe-*

*rich v. Church,* 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d 87 (1976) (rules of statutory construction do "not extend so far as to allow a court to substitute for the words 'prior to [a specific date]' words conveying an exactly opposite meaning").[10]

As the limiting language of § 27–19(d)(2) effectively renders nugatory any exemption for the employment practices of religious organizations, such limiting language violates the Free Exercise Clause of the First Amendment and Article 36 of the Maryland Declaration of Rights.

## B.

While the limiting language, consisting of the last five words of § 27–19(d)(2), is invalid, that language is severable from the rest of § 27–19(d)(2). Under Maryland law, "[t]here is a strong presumption that if a portion of an enactment is found to be invalid, the intent [of the legislative body] is that such portion be severed." *Board v. Smallwood,* 327 Md. 220, 245, 608 A.2d 1222, 1234 (1992). *See, e.g., Sugarloaf Citizens Assoc. v. Gudis,* 319 Md. 558, 574, 573 A.2d 1325, 1333 (1990); *Porten Sullivan Corp. v. State,* 318 Md. 387, 410, 568 A.2d 1111, 1122 (1990); *State v. Burning Tree Club, Inc.,* 315 Md. 254, 297, 554 A.2d 366, 387 (1989), and cases there cited. "This presumption has never been limited solely to bills enacted by the General Assembly, but has been applied to local ordinances," *Board v. Smallwood, supra,* 327 Md. at 245, 608 A.2d at 1234.

Moreover, with regard to § 27–19(d)(2), not severing the last five words of § 27–19(d)(2), and invalidating all of § 27–

---

**10.** Moreover, it is far from clear that substituting "primarily" for "purely," as argued for by Montgomery County, would remove the constitutional infirmity from the ordinance. For courts to determine whether positions in religious organizations perform "primarily" religious functions, for purposes of religious creed discrimination, would involve a significant "degree of entanglement" in the affairs of religious organizations. *N.L.R.B. v. Catholic Bishop of Chicago,* 440 U.S. 490, 499, 99 S.Ct. 1313, 1318, 59 L.Ed.2d 533, 540 (1979). *See Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church,* 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952).

19(d)(2), would present the identical constitutional infirmity which infected the ordinance in its original form. If all of § 27–19(d)(2) is invalidated, there will be no exemption for the employment practices of religious organizations. Under § 27–19, without subsection (d)(2), a church in Montgomery County could not discriminate, based on religious creed, in its employment of a minister or pastor. This would make § 27–19 unconstitutional as applied to religious organizations. In order for § 27–19 to be valid under the First Amendment and under Article 36 of the Maryland Declaration of Rights, there must be some exception to the prohibition against religious creed discrimination for religious organizations.

Consequently, we hold that the last five words of § 27–19(d)(2) are invalid and are severable from the remaining language of § 27–19(d)(2). Under the remaining language of § 27–19(d)(2), the defendants were entitled to employ only members of the Montrose Baptist Church.

*JUDGMENTS OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED, AND BOTH CASES ARE REMANDED TO THAT COURT WITH DIRECTIONS TO ENTER JUDGMENTS FOR THE DEFENDANTS. COSTS IN NO. 144 TO BE PAID ONE–HALF BY THE PLAIN-TIFFS AND ONE–HALF BY MONTGOMERY COUNTY. COSTS IN NO. 147 TO BE PAID ONE–HALF BY THE PLAINTIFF CARVER AND ONE HALF BY MONTGOM-ERY COUNTY.*