63 A.3d 51

**STATE of Maryland**

v.

**Adrian PHILLIPS.**

No. 457, Sept. Term, 2011.

Court of Special Appeals of Maryland.

March 20, 2013.

240

244

A. Paul Pineau (Douglas Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellant.

Roland S. Harris, IV (Allison P. Brasseaux, Paul B. De-Wolfe, Public Defender, on the brief), Baltimore, MD, for Appellee.

Panel: ZARNOCH, GRAEFF, RAYMOND G. THIEME JR., (Retired, Specially Assigned), JJ.

GRAEFF, J.

This appeal involves Baltimore City's Gun Offender Registration Act (the "Act" or "GORA"), a local ordinance that requires persons convicted of delineated gun offenses to register with the Police Commissioner of Baltimore City. BALT. CITY CODE, art. 19, §§ 60–1(d)(1), 60–1(f), 60–3(a) [1] Appellee, Adrian Phillips, a convicted gun offender, was charged in the Circuit Court for Baltimore City with failure to register. The circuit court granted appellee's motion to dismiss the charge because: (1) the Commissioner did not file regulations as required by the Act; and (2) the Act is unconstitutionally vague.

On appeal, the State raises the following issues for our review, which we have rephrased slightly:

1. Did the circuit court err in dismissing the charge based on its finding that the Police Commissioner failed to comply with regulatory filing provisions of the Act?

2. Did the circuit court err in finding the Act void for vagueness?

Appellee raises three additional issues as grounds to uphold the circuit court's dismissal of the charge:

3. Does the Act violate Equal Protection principles?

4. Does the Act violate separation of Powers principles?

5. Is the Act void because the State has preempted the field?

---

1. All references to the Baltimore City Code will be to the version in effect on June 24, 2010, when appellee was charged.

For the reasons set forth below, we shall reverse the judgment of the circuit court.

## THE ACT

Before discussing the details of this case, a brief summary of GORA is warranted. The Act requires that a "gun offender," a person convicted of a gun offense in the Circuit Court for Baltimore City or the District Court of Maryland for Baltimore City, register with the Police Commissioner of Baltimore City or his or her designee. BALT. CITY CODE, art. 19, §§ 60–1(d)(1), 60–1(f), 60–3(a). The registrant must specify the gun offender's name, any other name by which he or she has been legally known, and a list of all aliases he or she has used, *id.* § 60–5(b)(1),(4)–(5), as well as a description of the crime for which he or she was convicted, the date of conviction, his or her residence, and "any other information required by the rules and regulations adopted by the Police Commissioner under this subtitle." *Id.* § 60–5(b)(2)–(3),(7)–(8). An offender must register within 48 hours of either release from prison, if the conviction included imprisonment, or the date that the sentence was imposed, if the conviction did not include imprisonment. *Id.* § 60–4(a)(1)–(2). Baltimore City residents have additional verification requirements, including updating the contents of their registration every six months for three years from the date of the initial registration. *Id.* § 60–6(a)–(c); § 60–7.[2]

The Act created a misdemeanor crime for the failure to register, and for City residents, the failure to verify their registration information as required. It provides:

§ 60–10. **Prohibited conduct.**

No gun offender may:

(1) knowingly fail to acknowledge in writing his or her duty to register under this subtitle;

---

**2.** The statute provides that the offender is required to appear to "verify and update" the initial registration. BALT. CITY CODE, art. 19, § 60–6(b). The parties refer to this as a re-registration requirement. We will use these terms interchangeably.

(2) fail to register as required by this subtitle or the rules and regulations adopted under it;

(3) fail to verify information as required by this subtitle or the rules and regulations adopted under it; or

(4) provide false information in the registration or verification required by this subtitle or the rules and regulations adopted under it.

## § 60–11. Penalties.

(a) *In general.*

Any gun offender who violates any provision of § 60–10 of this subtitle is guilty of a misdemeanor and, on conviction, is subject to a fine of not more than $1,000 or imprisonment for not more than 12 months or both fine and imprisonment for each offense.

(b) *Each day is a separate offense.*

Each day that a violation continues is a separate offense.

Pertinent to the issues raised in this case, and discussed in more detail, *infra,* the Act gives discretionary regulatory authority to the Police Commissioner to adopt rules and regulations regarding "the form and content of the registration requirement." The ordinance states that "[a] copy of all rules and regulations adopted under this subtitle must be filed with the Department of Legislative Reference before they take effect." *Id.* § 60–2(c).

## FACTUAL AND PROCEDURAL BACKGROUND

On June 24, 2010, appellee was charged with failing to verify his registration pursuant to § 60–10 of the Act. According to the Statement of Charges, on December 1, 2008, appellee was convicted in the Circuit Court for Baltimore City of armed robbery and wearing, carrying, and transporting a handgun. As a result, he became a "gun offender" subject to the Act's registration requirements. BALT. CITY CODE, art. 19, §§ 60–1(e)(1)(i) (listing wearing, carrying, or transporting a handgun pursuant to Md.Code (2002) § 4–203 of the Criminal Law Article ("C.L."), as a gun offense pursuant to the Act).

The Application for Statement of Charges stated that, after appellee's conviction, he was advised of his requirement to register, and he "signed and dated a copy of the Gun Offender Registration Requirements form[,] which was forwarded to the Gun Offender Monitoring Unit." This form, which is referred to as the "Acknowledgment Form," advised: "In accordance with the provisions of the Baltimore City Code, Article 19 § 60, this is to notify you that you must register as a gun offender with the Baltimore City Police Department." It also stated:

By signing below I acknowledge that I have a duty to register and that the following requirements were explained to me:

A) I must personally appear at the Baltimore Police Department Gun Offender Monitoring Unit, 2100 Guildford Avenue, Room # 111, Baltimore, MD 21218, within 48 hours of my release, if I am imprisoned, or within 48 hours after sentence is imposed, if I am not imprisoned. I must verify my address and provide other information that the Baltimore Police Department requires and I may be photographed.

B) I am required to appear in person at the Gun Offender Monitoring Unit, 2100 Guildford Avenue, Room # 111, Baltimore, MD 21218, within 20 days of each 6–month anniversary of my initial registration date for a period of three years to update my registration.

C) If I move from one address to another within the City of Baltimore *or* move into the City of Baltimore from outside the City of Baltimore, I must personally appear at the Gun Offender Monitoring Unit, 2100 Guildford Avenue, Room # 111, Baltimore, MD 21218, within 10 days to verify and update my address.

D) Before I move from an address within the City of Baltimore to an address outside of the City of Baltimore, I must personally appear at the Gun Offender Monitoring Unit, 2100 Guildford Avenue, Room # 111, Baltimore, MD 21218 to provide my new address.

The form further stated that violation of the Act "is a misdemeanor punishable by a fine of not more than $1000, or imprisonment for not more than 1 year, or both. Each violation . . . is a separate offense."

The record reflects that, on December 3, 2009, appellee completed his initial registration at the Gun Offender Monitoring Unit. A form, entitled The Baltimore Police Department Gun Offender Registration (the "Registration Form"), was signed by appellee. The form contained various fields of information, including: name, date of birth, address, phone number, information relating to physical description, date of registration, next registration date, "Gang Affiliation/Source of Information," and "Additional Information." Given appellee's registration date, and that he was a resident of Baltimore City, appellee was required to verify and update his registration by June 23, 2010. BALT. CITY CODE, art. 19, § 60–6(a)–(b).[3]

According to the Statement of Charges, the police made efforts to ensure that appellee complied with the re-registration requirement. On June 4, 2010, a detective called appellee and left a voice mail message reminding him to re-register. On June 7, 2010, appellee "contacted the Gun Offender Monitoring Unit and advised [an officer] that he would respond to the office on [June 9, 2010] to re register." A detective subsequently went to the Baltimore City address appellee provided on his initial registration to advise him of his requirement to re-register. A woman who lived there informed the officers that appellee had not lived at the residence since his arrest for the gun charge in July 2008.

On June 10, 2010, appellee contacted the Gun Offender Monitoring Unit and stated that, due to an injury, he was unable to go to the office. He also stated that he was living with his grandmother, and he provided that address. On June

---

**3.** The ordinance provides that a resident of Baltimore City, with certain exceptions not relevant here, must re-register "within 20 calendar days after each 6–month anniversary of [the] initial registration." BALT. CITY CODE art. 19 § 60–6(b)(1). Because appellee's initial registration was December 3, 2009, his six-month anniversary was June 3, 2010, and he was required to re-register by June 23, 2010.

15, 2010, officers went to the residence of appellee's grand-mother, who stated that appellee was not staying with her, she had not heard from him, and she was not aware that he had been in an accident. The officers also contacted appellee's probation officer and his stepfather in an attempt to locate him. On June 21, 2010, a detective left a final voice mail message for appellee.

On June 24, 2010, appellee was charged with the failure to register pursuant to BALTIMORE CITY CODE art. 19 § 60–10, and a warrant was issued for his arrest. On December 9, 2010, appellee was arrested.

On January 24, 2011, appellee requested a jury trial, and his case was transferred to the Circuit Court for Baltimore City. On February 16, 2011, appellee filed a Motion to Dismiss and Request for Hearing. In his motion, appellee argued that the Act was "without force or effect as the authority of local government entities to regulate in the area of firearms is specifically pre-empted by state law."

On March 7, 2011, after the State filed a response to appellee's motion, arguing that the Act was not preempted by State law, appellee filed an answer to the State's response. In this answer, appellee raised additional reasons to dismiss the charge: (1) the Act was unconstitutionally vague; (2) it violat-ed constitutional protections against self-incrimination; (3) it violated separation of powers; (4) it imposed a cruel and unusual punishment; (5) it violated the equal protection clause; and (6) it lacked legal effect because the Police Commissioner failed to file accompanying rules and regula-tions with the Department of Legislative Reference.

On March 9, 2011, the circuit court held a hearing on appellee's motion to dismiss. Appellee argued that the Act violated the Fifth Amendment because it required that a person submit to "any questions the police officers might have for them" while in a "custodial situation." He asserted that the Act was vague because it required the registrant to give "[a]ny other information required by the rules and regulations adopted by the Police Commissioner under this sub title." He

argued that the registrant was subject to a "full trilemma," explaining: "You can't remain silent. If you say something it will be used against you. And if you lie you will be charged too because providing false information is also a crime. Also a violation of the statute. And on top of that you also have no lawyer." Finally, appellee argued that the Act violated the separation of powers doctrine because the "commissioner is acting as a defacto legislature," and it violated equal protection principles because Baltimore City residents were subject to treatment different from non-city registrants under the Act, resulting in "sentencing enhancements on a state law that punishes people who live in the City."

The State argued that the court should deny the motion to dismiss. It asserted that the Act was not vague because it is clear "what he needs to do as far as reporting. What information he needs to provide. And how often and where he needs to report." It further argued that the Act did not violate the Fifth Amendment because the registrant is "not in a custodial situation." Regarding the separation of powers argument, the State maintained that "the Police Commissioner is enforcing the law that is set out by the City Council," and regarding equal protection, it asserted that "the Supreme Court has reasoned that residence is not a fundamental constitutional right nor is it a classification that the Court has listed for areas of heightened scrutiny."

On April 8, 2011, after the parties filed additional memoranda, the court granted appellee's motion. It gave "three basic reasons" for its ruling: (1) the Police Commissioner had failed to comply with the requirement that all regulations must be filed with the Department of Legislative Reference ("DLR"); (2) "the citizens of Baltimore City have not been given constitutional[ly] sufficient notice of the substance of the regulations;" and (3) the Act was "unconstitutionally vague and awfully broad" and "lacks the specificity of regulatory language."

In a Memorandum Opinion issued the same day, the court, as discussed in more detail, *infra*, elaborated on these state-

ments. The court additionally discussed appellee's arguments based on preemption, equal protection, and protection against self-incrimination, rejecting these arguments.

On April 27, 2011, the State timely noted this appeal.

## STANDARD OF REVIEW

When we review a circuit court's grant of a motion to dismiss, " 'our task is confined to determining whether the trial court was legally correct in its decision to dismiss.' " *Menefee v. State*, 417 Md. 740, 747, 12 A.3d 153 (2011) (quoting *Washington Suburban Sanitary Comm'n v. Phillips*, 413 Md. 606, 618, 994 A.2d 411 (2010)). "[W]e assume the truth of all well-pleaded facts and allegations in the complaint, as well as the reasonable inferences drawn from them, in a light most favorable to the non-moving party." *Forster v. Office of Pub. Defender*, 426 Md. 565, 579, 45 A.3d 180 (2012).

## DISCUSSION

### I.

### THE ACT'S FILING REQUIREMENT

The State's first issue involves the circuit court's finding that the charges should be dismissed because the Police Commissioner did not comply with the provisions of the Act providing that regulations must be filed with DLR. Section 60–2 of the Act provides as follows:

a) *Commissioner may adopt.*

The Police Commissioner **may** adopt rules and regulations to carry out this subtitle.

b) *Scope.*

These rules and regulations may govern:

(1) the form and content of the registration required under this subtitle;

(2) the documentation required to verify the content of the registration required under this subtitle;

(3) the maintenance, use, and availability of the information that is collected by the Police Commissioner under this subtitle.

c) *Filing.*

A copy of all rules and regulations adopted under this subtitle **must** be filed with the Department of Legislative Reference before they take effect.

(Emphasis added).

 Recognizing that the language "may" in a statute usually connotes discretion, whereas the word "must" is viewed as "required or obliged by law," *Gazunis v. Foster,* 400 Md. 541, 565, 929 A.2d 531 (2007), *cert. denied,* 406 Md. 113, 956 A.2d 202 (2008), both parties agree that the ordinance gives the Police Commissioner discretion whether to adopt regulations, but if the commissioner exercises that discretion and adopts such regulations, it is mandatory that they be filed with DLR. The issues here are: (1) whether the Commissioner exercised his discretion and adopted regulations pursuant to § 60–2; and (2) if so, whether that requires dismissal of the charges against appellee.

Appellee's argument in this regard is based on § 60–5, which provides, in pertinent part, as follows:

(a) *In general.*

The registration must be in the form and contain the information that the Police Commissioner requires.

(b) *Specific information.*

The registration must specify:

(1) the gun offender's name;

(2) a description of the crime for which he or she was convicted;

(3) the date the gun offender was convicted;

(4) any other name by which the gun offender has been legally known;

(5) a list of all aliases that the gun offender has used;

(6) identifying factors of the gun offender, including a physical description;

(7) the gun offender's residence; and

(8) any other information required by the rules and regulations adopted by the Police Commissioner under this subtitle.

Appellee argues that "[t]he existence of a detailed acknowledgment form that offenders must sign and the existence of an equally detailed registration form that police must fill out indicate that the Police Commissioner exercised the discretion given to him . . . [and] adopted rules and regulations to carry out the Act."

The circuit court agreed, finding that "the Commissioner's registration forms are the embodiment of regulations and subject to the filing requirements of § 60–2(c)," stating that they are "enforcement devices that affect the substantive penal rights of prescribed gun offenders and possess both a general application and future effect." The court explained that

> within the forms, the Commissioner requires all sorts of additional information from the offender that was not specifically enumerated in the ordinance, e.g., the name, address, and phone number of the nearest relatives and friends, their relationship with the offender, the offender's occupation, vehicle information, and "Gang Affiliation/ Source of Information." All, arguably, pursuant to the regulatory authority given to the Commissioner by GORA.

The court further found that, if the mandatory filing "does not occur, the rules and regulations do not take legal effect."

The State contends that the circuit court erred in finding that the Police Commissioner "had issued de facto regulations without filing the same with DLR, rendering GORA without legal force and effect, and thus requiring dismissal of the charging document." The State advances several arguments in this regard. First, it asserts that appellee "has suffered no injury relating to, and thus has no standing to challenge, his allegations of error." Second, addressing the substance of

appellee's claim before the circuit court, the State argues that, "in the relevant period, the Police Commissioner did not issue regulations implicating the regulatory filing requirement relied upon by appellee." Third, the State contends that, even if the forms issued by the Police Commissioner did amount to de facto regulations, "the administrative filing requirement contained in GORA does not preclude a regulation, let alone the law itself, from being in full force and effect."

Appellee argues that the circuit court properly granted his Motion to Dismiss. He asserts that "the Gun Offender Registration Act is without legal effect because the Police Commissioner failed to file a copy of 'All Rules and Regulations' with the [DLR] as required by the Act." He contends that he "has standing to challenge the Act on the grounds that the Police Commissioner did not comply with the Act's filing requirement" because he "did in fact suffer injury or harm arising from the Commissioner's blatant disregard of the Act's requirement."

## A.

### Standing

The State asserts that, because appellee was "on notice of both the location of the GORA Office and the form and contents of the registration form," he did not suffer any injury or harm from the Police Commissioner's failure to formally issue or file the forms as regulations. It argues, therefore, that appellee has no standing to pursue his claim of error.

Appellee argues that he does have "standing to challenge the Act on the grounds that the Police Commissioner did not comply with the Act's filing requirement." He asserts that he did suffer injury or harm from the Police Commissioner's failure to properly file regulations in accordance with § 60–2(c). Specifically, he contends that, because § 60–5 of the Act "states that offenders will be required to provide 'any other information required by the rules and regulations adopted by the Police Commissioner under this subtitle,' " and because the Commissioner failed to file any regulations, he was "left to

speculate as to what information might be required from him at re-registration," and therefore, he was prevented "from seeking the advice of counsel as to whether he could refuse to answer certain questions," and prevented "from making a reasoned decision about whether he should comply with the re-registration process." He argues that his awareness of the contents of the Registration Form that was used at his initial registration "does not change this conclusion" because: (1) the form contained a section captioned "additional information"; and (2) he had "no assurance that the same form and the same questions would be used at his re-registration."

The circuit court rejected the State's argument that appellee had no standing to contest the Police Commissioner's failure to file the registration form with DLR because he had notice of the re-registration requirements, and therefore, he suffered no harm. The court stated that appellee "was unable to balance his constitutional rights, e.g., privilege against self-incrimination, without knowing the substance of the regulation beforehand," and he "rightfully argues that he does not know or have notice of when, where or how he could inspect the registration form, etc., to make an informed decision on how to proceed."

As this Court recently explained, "[s]tanding is a threshold issue; a party may proceed only if he demonstrates that he has a real and justiciable interest that is capable of being resolved through litigation." *Norman v. Borison*, 192 Md.App. 405, 420, 994 A.2d 1019 (2010), *aff'd on other grounds*, 418 Md. 630, 17 A.3d 697 (2011). "In order to have standing, a party must demonstrate an 'injury-in-fact,' or 'an actual legal stake in the matter being adjudicated.'" *Id.* (quoting *Hand v. Mfrs. & Traders Trust Co.*, 405 Md. 375, 399, 952 A.2d 240 (2008)).

Here, we agree with the State that appellee has no standing to argue that the Acknowledgment Form constituted a regulation. To be sure, this form listed the location of the GORA

office.[4] As the State notes, however, and appellee does not dispute, it is clear that appellee "was repeatedly informed of, and did in fact know," the location of the place to register. Thus, even if the Acknowledgment Form did constitute a regulation, appellee was not harmed by the Police Commissioner's failure to file it with DLR, and he has no standing to challenge any such failure to comply with the law.

■ The main argument in this case involves the Registration Form, and whether it constitutes a regulation by containing fields to obtain information other than that set forth in § 60–5(b)(1)–(7). As indicated, appellee argues that he was injured in this regard because he did not know what information he would be asked at re-registration, and therefore, he could not ask counsel if he could refuse to answer questions.

Although the State is correct that the Acknowledgment Form presented to appellee when he completed his initial registration provided him with notice that he was required to re-register, neither that form, nor the Registration Form itself, indicated what information he would be required to provide upon verification of his registration after six months. Appellee has standing to challenge whether the Registration Form constituted a regulation specifying the "other information" required. Thus, we turn to the merits of the argument, whether regulations were adopted, and if so, the effect of the failure to file such regulations with DLR.

## B.

### Regulations

The State contends that, "in the relevant period, the Police Commissioner did not issue regulations implicating the regulatory filing requirement" set forth in § 60–2(c).[5] It asserts

---

4. Although not explicitly spelled out, it appears that appellee contends that this form constitutes a regulation because, pursuant to § 60–4, a "gun offender must personally appear at an office designated by the Police Commissioner," and the Acknowledgment Form provided that location.

5. The State has advised that, after the circuit court's ruling in this case, "the Commissioner, in an abundance of caution and as an exercise of

that the form upon which the Baltimore City Police Department conducts registrations and re-registrations is "not a de facto regulation requiring formal issuance and filing." Rather, it asserts:

> The registration form is an internal [Baltimore City Police Department] office document upon which the Gun Offender Monitoring Unit collects information and has gun offenders review and verify that information's accuracy. Reflective of the fact that the registration form does not require the issuance of a regulation is that the form itself is a creature of the ordinance: "[t]he registration must be in the form and contain the information that the Police Commissioner requires," *id.* § 60–5(a); "[t]he registration must be signed and dated by the gun offender," *id.* § 60–5(c).

In any event, the State argues, "the administrative filing requirement contained in GORA does not preclude a regulation, let alone the law itself, from being in full force and effect."

Appellee argues that the "existence of a detailed acknowledgment form that offenders must sign and the existence of an equally detailed registration form that police must fill out, indicate that the Police Commissioner exercised" his discretion pursuant to § 60–2(a) of the Act and "adopted rules and regulations to carry out the Act." He asserts that, because the Police Commissioner failed to file these regulations with DLR in accordance with the mandatory language of § 60–2(c), the Act is "without legal effect," and the circuit court properly granted his motion to dismiss the charge against him.

In determining the meaning of the term "regulation," we apply well settled principles of statutory interpretation:

> In statutory interpretation, our primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules. We begin our

---

his discretionary authority, chose to issue and file certain statements, styled as regulations, aimed at addressing" the court's ruling. We will discuss these subsequently issued regulations in more detail, *infra.*

analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. If, however, the language is subject to more than one interpretation, it is ambiguous, and we endeavor to resolve that ambiguity by looking to the statute's legislative history, case law, statutory purpose, as well as the structure of the statute. When the statute is part of a larger statutory scheme, it is axiomatic that the language of a provision is not interpreted in isolation; rather, we analyze the statutory scheme as a whole considering the purpose, aim, or policy of the enacting body, and attempt to harmonize provisions dealing with the same subject so that each may be given effect.

*Lowery v. State,* 430 Md. 477, 490, 61 A.3d 794 (2013) (quoting *Doe v. Montgomery County Bd. of Elections,* 406 Md. 697, 712–13, 962 A.2d 342 (2008)).

In light of these principles, we start by looking to the language of the Act itself and whether it provides a definition of "regulation." *Id.* at 490–91, 61 A.3d 794. The Act does not define the term. Thus, we turn to a dictionary to seek guidance on the meaning of the word regulation. *See id.* (looking to a dictionary definition to help determine the meaning of a statutory term). Regulation is defined in Black's Law Dictionary as "[a] rule or order, having legal force, [usually] issued by an administrative agency." BLACK'S LAW DICTIONARY 1311 (8th ed. 2004).

We also find instructive the definition of the term in the Maryland Annotated Code, noting that the State Government Article defines the term "regulation" as "a statement or an amendment or repeal of a statement that (i) has general application; (ii) has future effect; [and] (iii) is adopted by a unit" to "(1) detail or carry out a law that the unit administers; (2) govern organization of the unit; (3) govern the procedure of the unit; or (4) govern practice before the unit." A

regulation can be "in any form," including: (1) a guideline; (2) a rule; (3) a standard; (4) a statement of interpretation; or (5) a statement of policy. Md.Code (2009 Repl.Vol.) § 10–101(g) of the State Government Article ("S.G."). A regulation does not include, however, a statement that "concerns only internal management of the unit" and "does not affect directly the rights of the public or the procedures available to the public." *Id.*

Applying these definitions, we agree with the State that the Registration Form is not a "regulation." The form does not constitute a statement, rule, or order. Rather, it merely is an internal document to assist the police in complying with the provisions of the ordinance. *See Wacha v. Kandiyohi County Welfare Board*, 308 Minn. 418, 242 N.W.2d 837, 839 (1976) (Bulletin that was "merely a restatement of existing welfare policy and a directive concerning internal management" that "was intended merely to implement existing law" was "not a rule within the definition of a rule in the [Minnesota] Administrative Procedure Act.").

To be sure, as appellee notes, the form included "other information" as specified in § 60–5(b), such as "gang affiliation." There is no evidence in the record, however, that this information was asked of registrants, much less required by the police. Indeed, as counsel for the State noted at oral argument, it can be inferred that the Registration Form contains fields clearly intended only for internal management, such as the "cc #," which the State advised was the central complaint number, information unlikely to be asked of a registrant. The record does not support a finding that the form was a regulation.

As indicated, the Police Commissioner has now filed regulations, which state that they are to "establish procedures to carry out the registration" as set forth in the Act. With respect to the information that a gun offender must supply, the regulations provide that the gun offender will:

 3. provide the following information which will be recorded on the Gun Offender Registration (Attachment 2):

(A) the gun offender's name;

(B) a description of the crime for which the gun offender was convicted;

(C) the date that the gun offender was convicted;

(D) any other name by which the gun offender has been legally known;

(E) a list of all aliases that the gun offender has used;

(F) identifying factors of the gun offender, including a physical description to include date of birth, sex, height, weight, eye color, hair color, any scars, and any visible tattoos; and

(G) the gun offender's residence and home and cellular phone numbers.

In addition to the above information, the Gun Offender Registration will also contain the following:

(A) the gun offender's date of registration;

(B) the gun offender's next six month verification date; and

(C) the date that the gun offender's duty to register expires.

Regs. BALT. CITY CODE art. 19 § 60 (2011) (filed with Baltimore City Department of Legislative Reference).[6] This statement, which sets forth the rules that the police will follow, constitutes a regulation. The mere form at issue here, which does not even indicate what information a registrant must supply, is not a regulation.

█ In any event, even if the Registration Form could be considered a regulation, the failure to file the form with DLR does not necessarily justify dismissal of the charges against appellee. The State argues that "[t]he filing requirement in GORA does not operate to delay a regulation's effective date but rather serves as an independent administrative dictate aimed at insuring that the City possesses copies of all agency regulations at a centralized location." It further contends

---

6. A form is attached to this regulation.

that, "even assuming that a regulation is not effective until filed, there is no basis to thus conclude that the entire ordinance, validly enacted by the City Council and clear on its face, is rendered inoperative until an implementing regulation is filed with DLR." "[T]here is absolutely no articulable reason to accept Appellee's contention that the entire unambiguous and detailed ordinance is rendered inoperative until a regulation is filed." The State asserts:

> Appellee was charged with failing to appear and re-register; this obligation—and thus Appellee's violation—is entirely separate and apart from the alleged regulations at issue in this case. Appellee's legal duty to re-register is created by the plain text of the ordinance itself and is not dependent on any action or inaction by the Police Commissioner.

Appellee argues that § 60–2(c) of the Act plainly states: "A copy of all rules and regulations adopted under this subtitle *must* be filed with the [DLR] *before* they take effect." Because the Act could not be implemented if the regulations that were adopted to carry it out were not in effect, appellee argues, the Act was without legal effect at the time he was charged.

We agree with the State that, even if forms did constitute regulations, they did not invalidate the Act or appellee's duty to re-register pursuant to the Act. Appellee asserts that the Act provides that gun offenders have to provide " 'any other information required by the rules and regulations adopted by the Police Commissioner,' " § 60–5(b)(8), but if regulations are not filed, they have no way to determine what information they must provide. Our reading of the Act, however, is that a gun offender must provide the specific information listed in the Act, as well as other information set forth in regulations adopted by the Police Commissioner. If regulations listing additional information to be provided are not adopted and filed, a gun offender could refuse to give the information.[7] Under those circumstances, a gun offender

---

7. We are not persuaded by the State's argument that a regulation is effective even if not filed. The plain language of the Act states: "A copy

would have an argument that he did not violate the statute. That, however, did not happen here. Appellee simply failed to re-register, as required. The Commissioner's failure to file the forms, if they constituted regulations, had no effect on appellee's duty to re-register, and it did not justify the court's dismissal of the charges against him.

## II.

## VAGUENESS

The State next contends that the circuit court erred in finding that the Act was "void for vagueness in violation of the United States and Maryland Constitutions." It asserts that the Act "clearly and unambiguously spells out the law's requirements, the prohibited conduct, and the potential penalties for non-compliance," and the Act's "delegation of regulatory authority to the [Police Commissioner] does not create an unconstitutionally vague enforcement regime."

Appellee contends that the court properly determined that the charges against him should be dismissed because "the Act is unconstitutionally vague." In support, he points to subsection § 60–5(b)(8) of the Act, which, as indicated, requires a gun offender to provide, in addition to seven specified items of information, "any other information required by the rules and regulations adopted by the Police Commissioner." Appellee argues that this provision fails to give "fair notice" of the information a gun offender might be required to provide, asserting that the "Act provides absolutely no guidelines, either explicit or implicit," on what the police might seek, and it provides no limitations on what the police might ask.[8]

---

of all rules and regulations adopted under this subtitle must be filed with the [DLR] before they take effect." § 60–2(c).

8. Appellee also points to § 60–5(e), which provides: "The Police Commissioner may require the gun offender to provide documentation that verifies the contents of the registration," in asserting that the Act is void for vagueness. This contention was not addressed by the circuit court, which is understandable because it was not adequately raised as an issue below. Although there was a reference to this subsection in the

In its reply brief, the State argues that § 60–5(b)(8), a provision that it deems "commonplace," does not render the law, or any portion of it, vague. In support of this argument, the State points to other federal and state statutes that contain similar language and have not been found to be unconstitutionally vague. *See e.g.* Sex Offender Registration and Notification Act, 42 U.S.C. § 16914(a)(7) (2006) ("The sex offender shall provide the following information ... (7) Any other information required by the Attorney General"); Gun Offender Registration Act, Admin. Code of New York City, § 10–603(c)(6) (2013) ("A gun offender shall ... provide the following information to the department: ... Any other information deemed pertinent by the department."). It further contends that, even if the regulatory provisions of the Act are void because they are unconstitutionally vague, this Court should sever those provisions and uphold the remaining valid parts of the law.

This Court recently explained:

> In deciding the constitutionality of a statute, we begin with the presumption that the statute is valid. *Galloway v. State*, 365 Md. 599, 610, 781 A.2d 851 (2001), *cert. denied*, 535 U.S. 990, 122 S.Ct. 1547, 152 L.Ed.2d 472 (2002). We will not find a statute unconstitutional if, " 'by any construction, it can be sustained.' " *Id.* at 611 [781 A.2d 851] (quoting *Beauchamp v. Somerset County*, 256 Md. 541, 547, 261 A.2d 461 (1970)). When the challenge to a statute is based on vagueness, the burden of establishing unconstitutionality is on the party attacking the statute. *Id.*

*Livingston v. State*, 192 Md.App. 553, 568, 995 A.2d 812 (2010).

When considering whether a law is void for vagueness, courts consider two criteria. *McFarlin v. State*, 409 Md.

---

pleadings, it was a fleeting reference, raised for the first time in the appellee's reply to the State's surrebuttal to appellee's motion. Under these circumstances, the contention is not sufficiently preserved for this Court's review. *See* Md. Rule 8–131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court.").

391, 411, 975 A.2d 862 (2009). "The first criterion is that a statute must be 'sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.'" *Livingston*, 192 Md.App. at 568, 995 A.2d 812 (quoting *Eanes v. State*, 318 Md. 436, 458–59, 569 A.2d 604 (1990)). The Court of Appeals has explained that "[t]he standard for determining whether a statute provides fair notice is 'whether persons of "common intelligence must necessarily guess at [the statute's] meaning."'" *Galloway*, 365 Md. at 615, 781 A.2d 851 (quoting *Williams v. State*, 329 Md. 1, 8, 616 A.2d 1275 (1992)). A statute does not fail for vagueness "simply because it requires conformity to an imprecise normative standard," nor is it vague "if the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises or even the words themselves, *if* they possess a common and generally accepted meaning." *Livingston*, 192 Md.App. at 569, 995 A.2d 812.

▬▬▬▬ The second criterion pertains to enforcement of the statute, and it requires "'that criminal statutes provide "legally fixed standards and adequate guidelines for police, judicial officers, triers of fact and others whose obligation it is to enforce, apply and administer the penal laws."'" *Id.* (quoting *Galloway*, 365 Md. at 615–16, 781 A.2d 851). "To survive analysis, a statute must 'eschew arbitrary enforcement in addition to being intelligible to the reasonable person.'" *Galloway*, 365 Md. at 615–16, 781 A.2d 851 (quoting *Williams*, 329 Md. at 9, 616 A.2d 1275). "[A] statute is not unconstitutionally vague merely because it allows for the exercise of some discretion on the part of law enforcement and judicial officials." *Id.* at 616, 781 A.2d 851. Rather, "[i]t is only where a statute is so broad as to be susceptible to irrational and selective patterns of enforcement that it will be held unconstitutional under this second arm of the vagueness principle." *Id.*

As indicated, appellee argues that § 60–(b)(8) is unconstitutionally vague because it does not provide adequate notice "of

what information a gun offender might be required to pro-
vide." The circuit court agreed, stating that "only after the
gun offender arrives at the place designated by the Police
Commissioner is he/she told the rules and requirements" of
the Act. The court stated: "The rules and regulations are not
simply unclear, they are unknown and unreviewable outside of
the walls of the Police Department. Gun offenders are left
with no fair notice on how to proceed." The court stated that
the practice "entrusts the Police Department to create, apply
and modify regulations not only in secret but in a wholly
arbitrary fashion" and it "gives the police the discretion to
transform the registration process from an information-gath-
ering document to an interrogation."

We disagree with the circuit court's decision to
dismiss the charges on the grounds of vagueness for several
reasons. First, we note that, "[a]s a general rule, the applica-
tion of the void-for-vagueness doctrine is based on the applica-
tion of the statute to the 'facts at hand.'" *Galloway*, 365 Md.
at 616, 781 A.2d 851 (quoting *Bowers v. State*, 283 Md. 115,
122, 389 A.2d 341 (1978)).[9] Thus, we look to whether the Act
is impermissibly vague as applied to appellee's conduct. In
that regard, we note that appellee was not charged with failing
to give "other information" requested by the police, but rath-
er, he was charged with failing to appear to re-register, as
required. The Act is not impermissibly vague as applied to
appellee's conduct.

---

9. A different rule governs, however, where the statute intrudes on
"fundamental constitutional liberties, particularly the First Amendment
guarantees of free speech and assembly." *Bowers v. State*, 283 Md.
115, 122, 389 A.2d 341 (1978). "Because of the potential 'chilling
effect' that vagueness can have on First Amendment liberties, permit-
ting a defendant to challenge a statute on its face for vagueness
becomes a 'rule of standing which allows a defendant to challenge the
validity of a statute even though the statute as applied to the defendant
is constitutional.'" *Galloway v. State*, 365 Md. 599, 617, 781 A.2d 851
(2001) (quoting *Ayers v. State*, 335 Md. 602, 625, 645 A.2d 22 (1994)),
*cert. denied*, 535 U.S. 990, 122 S.Ct. 1547, 152 L.Ed.2d 472 (2002).
Here, appellee has not asserted any First Amendment issues.

■ Second, even if appellee is permitted to challenge the Act on it face, we hold that the Act is not unconstitutionally vague. Section 60–5(b)(8) of the Act sets forth specific information that a gun offender must provide, as well as "any other information required by the rules and regulations adopted by the Police Commissioner under this subtitle." As we have indicated, if no regulations are filed, the gun offender is required to give only the listed information. If the regulations are filed, there is a way for a gun offender to determine what information will be required upon registration. The Act provides "fair notice" of its requirements and provides adequate guidelines for the enforcement of the law.[10]

■ Third, even if § 60–5(b)(8) was unconstitutionally vague, dismissal of the charges would not be warranted because only that provision would be severed and the remainder of the statute would remain. As the Court of Appeals has explained: "There is a strong presumption that if a portion of an enactment is found to be invalid, the intent is that such portion be severed." *Board of Supervisors of Elections v. Smallwood*, 327 Md. 220, 245–46, 608 A.2d 1222 (1992). *Accord Sugarloaf Citizens Assoc. v. Gudis*, 319 Md. 558, 574, 573 A.2d 1325 (1990). This presumption applies to bills enacted by

---

**10.** Indeed, as the State notes, there are many other federal and state registration statutes, particularly sex offender registration statutes, that have a similar requirement. *See, e.g.,* 42 U.S.C. § 16914(a)(7) ("sex offender shall provide the following information ... (7) Any other information required by the Attorney General"); Haw.Rev.Stat. § 846E–2(d)(16) (2012) (registration information includes "[a]ny additional identifying information about the covered offender"); Me.Rev.Stat. tit. 34–A, § 11221(a)(G) (2012) (sex offender registry must include listed information and "[a]ny other information the bureau determines important"); Ohio Rev.Code Ann. § 2950.04 (2013) (sex offender registration requires listed information and "[a]ny other information required by the bureau of criminal identification and investigation"); Tex.Code Crim. Proc. Ann. art. § 62.051(c)(8) (2012) (a sex offender registering in Texas must provide listed information and "any other information required by the department"); Gun Offender Registration Act, Admin. Code of New York City, § 10–603(c)(6) (2013) ("A gun offender shall ... provide the following information to the department: ... Any other information deemed pertinent by the department."). Our research has not found any case holding these provisions to be unconstitutionally vague.

the General Assembly and to local ordinances. *Davidson v. Miller,* 276 Md. 54, 83, 344 A.2d 422 (1975), and it "applies even in the absence of an express clause declaring the drafters' intent that the enactment be severed if a portion is found to be invalid." *Cities Service Co. v. Governor,* 290 Md. 553, 575, 431 A.2d 663 (1981). Moreover, "[i]n addition to this general presumption, it is a settled principle that '[w]hen the dominant purpose of an enactment may largely be carried out notwithstanding the [enactment's] partial invalidity, courts will generally hold the valid portions severable and enforce them.'" *Smallwood,* 327 Md. at 246, 608 A.2d 1222 (quoting *O.C. Taxpayers v. Ocean City,* 280 Md. 585, 601, 375 A.2d 541 (1977)).

Accordingly, even if the part of the Act identified by appellee was void for vagueness, the remainder of the Act was valid. Appellee was still obligated to re-register and verify his name, address, and other information as enumerated in § 60–5(b)(1)–(7). The charges against appellee for failure to do so were improperly dismissed on the ground that it was unconstitutionally vague. *See Santos v. State,* 284 Ga. 514, 668 S.E.2d 676, 680 (2008) (decision rendering unconstitutional the address registration requirement as applied to homeless sex offenders with no street address does not exempt such offenders from reporting other information required under the statute).

### III.

### EQUAL PROTECTION

Appellee contends that, even if we disagree with the circuit court's rationale for granting the motion to dismiss, we should uphold the ultimate ruling dismissing the charges on any of three grounds. His first contention in this regard is that the Act violates equal protection principles.

The circuit court rejected appellee's equal protection argument. That does not, however, preclude us from considering this issue. As the Court of Appeals recently explained:

"In the interest of judicial efficiency, we may affirm the judgment of a trial court to grant a motion to dismiss on a different ground than that relied upon by the trial court, as long as the alternative ground is before the Court properly on the record." *Forster*, 426 Md. at 580–81, 45 A.3d 180. *Accord State v. Rush*, 174 Md.App. 259, 289, 921 A.2d 334 (2007) (This Court may "affirm the circuit court's decision on any ground adequately shown by the record."), *aff'd in part and rev'd in part on other grounds*, 403 Md. 68, 939 A.2d 689 (2008).

Appellee's equal protection contention is premised on the distinctions in the Act based on residence. He notes that a gun offender is defined as a person convicted of a gun offense in a Baltimore City court. He further notes that "[g]un offenders who are residents of Baltimore City are subject to additional requirements." He explains:

> Specifically, those offenders are required to report to the designated office every six months for a period of three years "to verify and update, as appropriate, the contents of the registration." §§ 60–6(b) & 60–7. Additionally, a Baltimore City gun offender must personally appear at the designated office "within 10 calendar days after moving from one residence in Baltimore City to another residence in Baltimore City." § 60–6(c)(2). He must also appear "before moving from a residence in Baltimore City and assuming a new residence out of Baltimore City." § 60–6(c)(3).

> The Act, therefore, imposes different requirements on different categories of people. First, the Act distinguishes between those who are convicted of a gun offense in a Baltimore City [c]ourt and those who are convicted of a gun offense elsewhere. If a Baltimore City resident is convicted of a gun offense in a neighboring jurisdiction, he is not required to register. If a County resident is convicted of a gun offense in a Baltimore City [c]ourt, he is required to register. Second, among offenders who are subject to the registration requirement, the Act distinguishes between offenders who live in Baltimore City and those who do not. If a Baltimore City resident is convicted of a gun offense in a

Baltimore City [c]ourt, he is required to register with the Police Commissioner every six months for three years. He is also required to notify the Commissioner whenever he moves. If a County resident is convicted of a gun offense in a Baltimore City [c]ourt, he is only required to register once, and he is not required to report changes in residence. Both sets of distinctions violate the Fourteenth Amendment of the United States Constitution and Article 24 of the Maryland Declaration of Rights.[11]

Appellee asserts that, in reviewing the constitutionality of the Act on equal protection grounds, we should apply strict scrutiny because the Act "infringe[s] on fundamental rights."

The State disagrees. It asserts that appellee's argument "relies on classifications concerning jurisdiction of residence and jurisdiction of conviction," and "[b]ecause these classifications do not involve a suspect class like race or gender, and do not infringe on any fundamental rights," the proper standard of review is rational basis. Applying rational basis review, the State contends, results in a finding that the Act does not violate principles of equal protection.

The Court of Appeals has explained that there are "three levels of constitutional scrutiny employed in our jurisprudence when a legislative enactment is challenged under either [ ] due process or equal protection concepts." *Conaway v. Deane*, 401 Md. 219, 272, 932 A.2d 571 (2007). The three classifications are as follows:

---

**11.** The Maryland Declaration of Rights provides, in pertinent part, "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Mᴅ. Dᴇᴄʟ. Rɪɢʜᴛs art. 24. Although the Maryland Declaration of Rights does not contain an express equal protection provision, the Court of Appeals has recognized that principles of equal protection are embodied in the due process requirement of Article 24. *Tyler v. City of College Park*, 415 Md. 475, 499, 3 A.3d 421 (2010). *See also Lonaconing Trap Club Inc. v. Md. Dep't of the Env't*, 410 Md. 326, 342 n. 16, 978 A.2d 702 (2009); *Conaway v. Deane*, 401 Md. 219, 272 n. 33, 932 A.2d 571 (2007).

"[T]he top tier of [constitutional] review contemplates that when a statute creates a distinction based upon clearly 'suspect' criteria, or when that enactment infringes upon personal rights or interests deemed to be 'fundamental,' then the legislative product must withstand a rigorous, 'strict scrutiny.'" When utilizing this most-demanding standard of constitutional review, we deem unconstitutional a challenged legislative classification unless the distinction formed by it is "necessary to promote a compelling government interest." ...

In contrast, we generally employ the least exacting and most deferential standard of constitutional review when the legislative action under review neither interferes significantly with a fundamental right nor implicates a suspect classification. Under this "rational basis" level of scrutiny, the classification will pass constitutional muster so long as it is "rationally related to a legitimate governmental interest." In other words, we will uphold the statute under rational basis review "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [governmental] actions were irrational." Statutes reviewed pursuant to this level of scrutiny are presumed constitutional, "and will be invalidated only if the classification is clearly arbitrary." "[A] classification [subject to rational basis review] having some reasonable basis need not be made with mathematical nicety and may result in some inequality" so long as the [S]tate can produce any conceivable "state of facts" to justify the distinction. A statute subject to rational review often passes constitutional muster.

A third level of review has arisen to leaven the rigid two-tiered constitutional framework by which courts review the constitutionality of government action. A "heightened" level of scrutiny, otherwise known as "intermediate scrutiny," is triggered when the challenged action creates a classification "which ha[s] been subjected to a higher degree of scrutiny than the traditional and deferential rational basis

test, but which ha[s] not [yet] been deemed to involve suspect classes or fundamental rights." This middle-tier scrutiny may be implicated to review a "quasi-suspect" classification. In order to survive this intermediate level of scrutiny, the statute in question "must serve important government objectives and must be substantially related to the achievement of those objectives."

*Lonaconing Trap Club, Inc. v. Md. Dep't of the Env't,* 410 Md. 326, 341–42, 978 A.2d 702 (2009) (quoting *Deane,* 401 Md. at 272–76, 932 A.2d 571).

■■■ Here, as the State notes, the classification upon which appellee's claim rests is based on "jurisdiction of residence and jurisdiction of conviction." [12] Because the Act distinguishes between gun offenders based on geography, which is not a suspect classification, and it does not burden a fundamental right, we will apply the rational basis test to appellee's equal protection claim. *See Dep't of Transp. v. Armacost,* 299 Md. 392, 409, 474 A.2d 191 (1984) ("In reviewing statutory distinctions based on territory, the rational basis test applies because no fundamental right or suspect class is affected."). *Accord Weems v. Little Rock Police Dep't,* 453 F.3d 1010, 1016 (8th Cir.2006) (rational basis review applied where Arkansas Sex Offender Registration statute's residency restriction was not based on suspect classification and did not implicate a fundamental right under equal protection jurisprudence), *cert. denied,* 550 U.S. 917, 127 S.Ct. 2128, 167 L.Ed.2d 862 (2007).

Applying the rational basis standard of review, "we will uphold a statute . . . unless the varying treatment of different

---

12. The circuit court described the "three sub-groups" created by the Act as follows:
 1. A gun offender convicted neither in the Circuit Court for Baltimore City nor [a Baltimore City District Court] = no requirement to register.
 2. A gun offender who is convicted in a Baltimore City court but resides outside of Baltimore City = must register once.
 3. A gun offender who is both convicted in a Baltimore City court and resides in Baltimore City = continual six month obligation to register and update information for a period of three years.

groups or persons is so unrelated to the achievement of any combination of legitimate purposes that the court may conclude only that the governmental actions were arbitrary or irrational." *Tyler v. City of College Park*, 415 Md. 475, 501, 3 A.3d 421 (2010). Rational basis review is not intended to allow us to " 'sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.' " *Deane*, 401 Md. at 316, 932 A.2d 571 (quoting *Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). Rather, "a statute reviewed under the 'rational basis' test 'enjoys a strong presumption of constitutionality.' " *Id.* (quoting *Whiting–Turner Contracting Co. v. Coupard*, 304 Md. 340, 352, 499 A.2d 178 (1985)).

The State contends that "GORA's purpose is to enhance public safety and reduce violent crime." It asserts:

> To achieve that purpose the law creates a registration system and a database that monitors individuals convicted of certain crimes in Baltimore City. GORA does impose additional requirements on gun offenders who reside in Baltimore City following release from jail, but this distinction is entirely reasonable: the Mayor and City Council may have concluded that gun offenders living in other jurisdictions pose a less serious or immediate threat to the safety of City residents. GORA also imposes no registration requirements on persons who are convicted of qualifying gun crimes in jurisdictions other than Baltimore City, but this, too, is a reasonable choice: the Mayor and City Council may have concluded that, regardless of residence, the administrative burdens affiliated with registering such offenders outweighed the benefit, or that persons who commit firearm offenses outside of the City are less likely to be involved with criminal activity inside the City.

Initially, with respect to the Act's applicability only to people convicted of gun crimes in Baltimore City, we note that the Act, as a local ordinance, is properly limited to crimes committed in Baltimore City. *See Chairman of the Bd. of Tr. of Employees' Ret. Sys. v. Waldron*, 285 Md. 175, 184, 401

A.2d 172 (1979) ("Ordinarily, statutes not applicable extraterritorily but only to acts done within jurisdiction.") (citing *State v. Kriss*, 191 Md. 568, 573, 62 A.2d 568 (1948)). Moreover, with respect to the additional provisions related to residents of Baltimore City, it is well-established that crime prevention is a legitimate governmental interest. *See McDowell v. State*, 407 Md. 327, 333–34, 965 A.2d 877 (2009) (weighing the government's interest in crime detection against other concerns); *Rojas v. State*, 52 Md.App. 440, 446, 450 A.2d 490 (1982) (recognizing that the State has a legitimate interest in protecting public safety). We agree with the State that the geographic distinctions in the Act are rationally related to the Act's crime prevention purpose. Accordingly, we hold that appellee has not met his burden of establishing that the Act violates the guarantees of equal protection under the law.

## IV.

## SEPARATION OF POWERS

Appellee's next contention is that the Act violates separation of powers principles. He contends that, even though this issue was not addressed by the circuit court, dismissal of the charges against him can be upheld on this ground. *See Forster*, 426 Md. at 580–81, 45 A.3d 180 (appellate court may affirm circuit court's grant of a motion to dismiss on a ground different from that relied on by the circuit court).

Appellant relies on Article 8 of the Maryland Declaration of Rights, which provides: "That the Legislative, Executive and Judicial powers of the Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other." MD. DECL. OF RIGHTS art. 8. Although acknowledging that the legislature "may grant an executive branch agency rulemaking authority and that the executive branch agency may use that authority to issue rules and regulations," appellee argues that the City Council's delegation of authority to the Police Commissioner "to determine

what information a gun offender is required to provide at the time of registration or re-registration" "far exceeds the scope of permitted rulemaking" because it "effectively granted the Commissioner the power to enact a criminal law."

The State contends that the delegation of authority in the Act does not violate separation of powers principles, but rather, it "reflects a considered, careful, and commonplace judgment by the City Council and Mayor." It asserts that "the regulatory model adopted by [the Act] is a hallmark of the American legal system: the legislative branch sets forth the law while the executive branch establishes the framework and operational details necessary to carry it out."

We find instructive the Court of Appeals' decision in *Christ v. Maryland Department of Natural Resources*, 335 Md. 427, 441, 644 A.2d 34 (1994). In that case, the Court noted that Md.Code (1993 Supp.) § 8–704 of the Natural Resources Article, encompassed within the "State Boat Act" subtitle, provided: "The Department may adopt regulations necessary to carry out the provisions of this subtitle" and "shall adopt regulations governing the ... operations of any vessels subject to this subtitle so that each vessel complying with the regulations may be operated with equal freedom or under similar requirements on all waters of the State." *Id.* at 431 n. 2, 644 A.2d 34. The Maryland Department of Natural Resources enacted a regulation, COMAR 08.18.02.05A, that prohibited "the operation of personal watercraft in Maryland waters by any individual who is less than 14 years old." [13] *Id.* at 431, 644 A.2d 34. Mr. Christ, who was under the age of 14, challenged the regulation, arguing, in part, that the regulation violated the separation of powers between the legislative and executive branches because "an age restriction for operating a particular type of vessel involves a 'fundamental policy making decision' that 'can only be done by the General Assembly.'" *Id.* at 433–34, 644 A.2d 34.

---

**13.** A "personal watercraft" included a "jet ski." *Christ v. Md. Dep't of Natural Res.*, 335 Md. 427, 431 n. 1, 644 A.2d 34 (1994).

The Court of Appeals disagreed, holding that the regulation did not violate the separation of powers. *Id.* at 445, 644 A.2d 34. It explained:

Of course, the General Assembly cannot constitutionally delegate to another body its "fundamental decision making authority" in the sense that it cannot delegate a function which the Constitution expressly and unqualifiedly vests in the General Assembly itself. Thus the General Assembly could not delegate to an administrative agency its power to impeach, to propose constitutional amendments, or to enact statutes. *See, e.g., Sullivan* [*v. Board of License Com'rs for Prince George's County*] 293 Md. [113] at 124 [442 A.2d 558 (1982) ] ("Manifestly, the power delegated to an administrative agency to make rules is not the power to make laws"); *Comm'n On Med. Discipline v. Stillman,* 291 Md. 390, 413, 435 A.2d 747, 759 (1981) ("the legislature ... cannot validly redelegate its lawmaking authority to others["] ). Nevertheless, when the General Assembly enacts a statute, embodying its policy decision or decisions, the Legislature often must delegate significant authority to the executive branch which is vested with the constitutional responsibility of administering the statute.

As previously discussed, this authority delegated to executive branch agencies may include a broad power to promulgate legislative-type rules or regulations in order to implement the statute. Such rules or regulations will often, of necessity, embody significant discretionary policy determinations. Nonetheless, this Court has repeatedly upheld the constitutionality of administrative regulations reflecting policy determinations which have been just as "fundamental" as the age restriction embodied in COMAR 08.18.02.05A.

*Id.* at 444–45, 644 A.2d 34. *See also Lussier v. Md. Racing Comm'n,* 343 Md. 681, 688, 684 A.2d 804 (1996) ("This Court has consistently held that, where the Legislature has delegated such broad authority to a state administrative agency to promulgate regulations in an area, the agency's regulations are valid under the statute if they do not contradict the statutory language or purpose.").

Here, the discretion given by the City Council to the Police Commissioner to determine what, if any, additional information a gun offender is required to provide when he or she registers does not violate separation of power principles. Rather, this delegation represents a constitutionally permissible decision by the Baltimore City legislative branch to allow the Police Commissioner, a member of the executive branch, to "promulgate legislative-type rules or regulations in order to implement the statute." *Christ*, 335 Md. at 445, 644 A.2d 34. *Accord McDaniel v. Am. Honda Fin. Corp.*, 400 Md. 75, 91, 926 A.2d 757 (2007) ("The General Assembly . . . may enact statutes expressing its general disposition and policy decisions on certain matters. Those statutes, by virtue of their delegation of a degree of interpretive or enforcement authority to other branches of government . . . do not equate necessarily with the wholesale delegation of law-making authority."). The Act's delegation of regulatory authority to the Police Commissioner does not violate principles of separation of powers.[14]

## V.

## PREEMPTION

■■■ Appellee's final contention is that the Act "is void because the State has preempted the existing field." He notes that the State has enacted numerous laws regarding guns, including, criminalizing "the use of certain guns in the commission of crimes," and "the possession of certain firearms by someone previously convicted of certain crimes," regulating "the transfer and purchase of certain guns," "the storage of certain guns," and "the discharge of guns in certain locations," and requiring "the registration of certain guns with the po-

---

**14.** The parties address, in footnotes, the issue whether Article 8 of the Maryland Declaration of Rights even applies in this case, given that Article 8 is not applicable to local government, *see Sugarloaf Citizens Association v. Gudis,* 319 Md. 558, 574, 573 A.2d 1325 (1990), and the Baltimore City Council, the legislative branch of the City, is a local entity. Because this issue is relegated by the parties to a footnote, and given our determination that there is no separation of powers issue here, we will not address this issue.

lice." Appellee argues that, "[g]iven the scope and breadth of those laws, the only conclusion that can be reached is that the State has preempted the field with respect to gun offenses."

The State concedes that "the State has enacted numerous pieces of legislation touching on firearm ownership and gun-related crimes," but it argues that "the mere fact that the State has legislated in these areas does not preclude local jurisdictions from acting in the policy arena implicated by" the Act. It further contends that the Act "does not govern the ownership or sale of firearms," but rather, it "focuses on the post-conviction status of persons who have been found guilty of certain gun-related crimes." It continues: "While State law prohibits such persons from owning or possessing guns," the Act "imposes certain registration and verification requirements on those persons. This legal and policy area is not touched upon by State law and there is accordingly no basis upon which to find preemption of any sort."

The Court of Appeals has explained that " 'state law may preempt local law in one of three ways: 1) preemption by conflict, 2) express preemption, or 3) implied preemption.' " *Montrose Christian Sch. Corp. v. Walsh,* 363 Md. 565, 579 n. 5, 770 A.2d 111 (2001) (quoting *Talbot County v. Skipper,* 329 Md. 481, 487–88, 620 A.2d 880 (1993)). A local law is preempted by conflict " 'when it prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law.' " *Id.* at 580, 770 A.2d 111 (quoting *Skipper,* 329 Md. at 487 n. 4, 620 A.2d 880.) " 'Express preemption occurs when the General Assembly prohibits local legislation in a field by specific language in a statute.' " *Md. Reclamation Assocs. v. Harford County,* 414 Md. 1, 36, 994 A.2d 842 (2010) (quoting *Worton Creek Marina, LLC v. Claggett,* 381 Md. 499, 512 n. 6, 850 A.2d 1169 (2004)). Thus, for example, C.L. § 4–209(a) provides:

> *State preemption.*—Except as otherwise provided in this section, the State preempts the right of a county, municipal corporation, or special taxing district to regulate the pur-

chase, sale, taxation, transfer, manufacture, repair, owner-
ship, possession, and transportation of:

> (1) a handgun, rifle, or shotgun; and
>
> (2) ammunition for and components of a handgun, rifle, or
> shotgun.

Appellee does not contend, nor could he, that the Act is
expressly preempted or preempted by conflict. As the State
notes, the Act does not regulate the possession or sale of a
firearm. Rather, it requires gun offenders convicted in Balti-
more City to register with the Police Commissioner. The Act
does not conflict with any State law.

Appellee's contention is based on implied preemption. He
argues that the Act is impliedly preempted because the State
has so thoroughly regulated the field of gun offenses.

 To find preemption by implication, the General
Assembly must have " 'acted with such force that an intent by
the State to occupy the entire field must be implied[.]' " *Md.
Reclamation Assocs.*, 414 Md. at 36, 994 A.2d 842 (quoting
*Skipper,* 329 Md. at 488, 620 A.2d 880). "[T]he primary
indicia of a legislative purpose to preempt an entire field of
law is the comprehensiveness with which the General Assem-
bly has legislated in the field." *Skipper,* 329 Md. at 488, 620
A.2d 880 (quoting *Howard County v. Potomac Elec. Power
Co.,* 319 Md. 511, 523, 573 A.2d 821 (1990)). *Accord Genies v.
State,* 426 Md. 148, 155, 43 A.3d 1007 (2012) ("Field preemp-
tion is implicated when an entire body of law is occupied on a
comprehensive basis by a statute.").

 There is no dispute that the State has heavily regulat-
ed the field of use, ownership, and possession of firearms.[15]

---

15. *See, e.g.,* Md.Code (2010 Supp.) §§ 4–104 of the Criminal Law
Article ("C.L.") (prohibiting a person from storing or leaving a loaded
firearm where an unsupervised child would gain access to it); C.L. § 4–
108 (regulating the discharging of a weapon in Anne Arundel County,
Caroline County, and St. Mary's County); C.L. § 4–203 (regulating the
wearing, carrying, or transporting handgun); C.L. § 4–204 (prohibiting
the use of a firearm in commission of crime of violence); C.L. § 4–303
(prohibiting the transportation, possession, or transfer of an assault

We hold, however, that the State has not so extensively regulated the field of firearm use, possession, and transfer that all local laws relating to firearms are preempted. *See* 93 Op. Att'y Gen. 126 (2008) (although the General Assembly "has expressly and broadly preempted local regulation of the manufacture, sale, ownership, possession, and transfer of firearms," it did not intend "to preempt all local laws that are in any degree related to firearms," and accordingly, a proposed Baltimore City ordinance which would require a gun owner to report the theft or loss of a firearm was not preempted by State law). We find no merit to appellee's claim that the Act is preempted by State law.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. COSTS TO BE PAID BY APPELLEE.**

---

pistol); C.L. § 4–404 (prohibiting the use of a machine gun in a crime of violence); Md.Code (2010 Supp.) § 5–117 of the Public Safety Article ("P.S.") ("A person must submit a firearm application in accordance with this subtitle before the person purchases, rents, or transfers a regulated firearm."); P.S. §§ 5–128 & 5–129 (regulating the purchase of multiple firearms within a 30–day period); P.S. § 5–130 (regulating gun shows); P.S. § 5–132 (mandating safety locks on handguns offered for sale, rent or transfer); P.S. § 5–133 (prohibiting the possession of a regulated firearm by certain persons); P.S. § 5–134 (restrictions on sale, rental, or transfer of regulated firearms); P.S. § 5–137 (regulating out-of-state purchases of regulated firearms); P.S. § 5–138 (prohibiting the sale, transfer, or disposal of a stolen regulated firearm); P.S. § 5–140 (prohibiting the transportation of a regulated firearm for the purpose of unlawfully selling or trafficking of the regulated firearm); P.S. § 5–141 (prohibiting the knowing participation in a straw purchase of a regulated firearm to a minor or to a person prohibited by law from possessing a regulated firearm); P.S. § 5–203 (prohibiting the possession of a short-barreled rifle or short-barreled shotgun); P.S. § 5–205 (regulating the possession of a rifle or shotgun by a person with mental disorder).